# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**ROBERT DAVIS,**
      Plaintiff,

v.

**JOCELYN BENSON**, in her official and individual capacities as the Secretary of State, and
**JANICE WINFREY,** in her official and individual capacities as the Detroit City Clerk, and
**DETROIT DEPARTMENT OF ELECTIONS,**
      Defendants.

Case No. 20-cv-
**Hon.**

_____/

| | |
|---|---|
| **ANDREW A. PATERSON (P18690)** | **HEATHER S. MEINGAST (P55439)** |
| Attorney for Plaintiffs | ERIK GRILL (64713) |
| 2893 E. Eisenhower Pkwy | Assistant Attorneys General |
| Ann Arbor, MI 48108 | Attorneys for Defendant Benson |
| (248) 568-9712 | P.O. Box 30736 |
| aap43@outlook.com | Lansing, MI 48909 |
| | (517) 335-7659 |
| | meingasth@michigan.gov |
| | grille@michigan.gov |
| | |
| | JAMES D. NOSEDA (P52563) |
| | City of Detroit Law Department |
| | Attorneys for Defendants Winfrey |
| | and Detroit Department of Elections |
| | 2 Woodward Ave, 5th Floor |
| | Detroit, MI 48226 |
| | (313) 237-5032 |
| | cunninghamp@detroitmi.gov |

_____/

A companion case arising out the same transactions or occurrences as alleged in this complaint is **currently pending in the Western District before U.S. District Judge Paul Maloney in the case of** *Robert Davis, et.al., v Jocelyn Benson et.al.*, **Case No. 20-cv-00915.**

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, ROBERT DAVIS[1], by and through his attorney, ANDREW A. PATERSON, and for his Complaint and Jury Demand ("Complaint"), states as follows:

## I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and, the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. 1983; 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1367.

3. This Court also has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

4. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391(b)(1). Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

---

[1] Prior to filing the instant action, Plaintiff Robert Davis advised counsel that he may want to proceed *in propria persona* in this case.

5. Public officials sued in their official capacity "reside" in the county where they perform their official duties. *See O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972).

6. Defendant Jocelyn Benson's principal office is in Lansing, MI, and Defendant Jocelyn Benson performs her official duties in Lansing, MI.

7. Lansing, MI is in the Western District of Michigan. Therefore, venue is proper within the Western District of Michigan under 28 U.S.C. § 1391(b)(1).[2]

8. Events giving rise to the causes of action pled and alleged herein occurred in the Western District of Michigan.

## III. **PARTIES**

9. Plaintiffs repeat, reallege and incorporate, the foregoing allegations, as though fully set forth and stated herein.

---

[2] Under 28 U.S.C. § 1391(b)(1) venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The determination of the proper venue for a civil action in federal court is "generally governed by 28 U.S.C. 1391." *Atlantic Marine Const. Co. v U.S. District. Court for W.Dist. of Texas*, 571 U.S. 49, 55 (2013). "[T]he court must determine whether the case falls within one of the three categories set out in 1391(b). If it does, venue is proper[.]" *Id*. at 55.

10.     Plaintiff, Robert Davis ("**Plaintiff Davis**" or "**Plaintiff**"), is a resident and registered voter of the City of Highland Park, County of Wayne, State of Michigan.  On October 5, 2020, Plaintiff Davis voted by absentee ballot for the upcoming November 3, 2020 presidential general election.

11.     Defendant, Jocelyn Benson ("**Defendant Secretary of State**"), is the duly elected Secretary of State for the State of Michigan.  Defendant Secretary of State "the chief election officer of the state" with "supervisory control over local election officials in the performance of their duties under the provisions of" the Michigan Election Law, MCL 168.1 *et seq*. Mich. Comp. Laws §168.21.

12.     Defendant, Janice Winfrey ("**Defendant Detroit City Clerk**" or "**Defendant Janice Winfrey**"), is the duly elected City Clerk for the City of Detroit. Defendant Detroit City Clerk has served continuously as the elected City Clerk for the City of Detroit since January 1, 2006.

13.     Defendant, Detroit Department of Elections ("**Defendant Department of Elections**") is a department created by §3-101 of

the 2012 Detroit City Charter that is charged with the responsibility to plan, monitor, and administer all elections in the City of Detroit. The Defendant Department of Elections is ran and headed by the Defendant Detroit City Clerk.

14. An actual controversy exists between the Plaintiff and the named Defendants.

## IV. CAUSES OF ACTION

### COUNT I
**Defendant Secretary of State's Directive And The Defendants Janice Winfrey and Detroit Department of Elections Decision To Mass Mail Unsolicited Absentee Ballot Applications To Registered Voters In The City of Detroit Violated Plaintiff Davis' Right To Equal Protection Under The Law To Participate In An Election On Equal Basis As Other Registered Voters.**

15. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

16. Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.,* this claim is being brought by Plaintiff Davis against Defendants Secretary of State and Janice Winfrey, in their respective official capacities, as the duly elected Secretary of State for the State of Michigan and the duly elected city clerk for the City of Detroit.

17.     Plaintiff seeks an award of damages for this claim/count against the Defendant Secretary of State in her individual capacity.

18.     Plaintiff seeks an award of damages for this claim/count against the Defendant Janice Winfrey in both her official and individual capacities.

19.     For this count, Plaintiff also seeks prospective declaratory and injunctive relief against Defendants Secretary of State and Janice Winfrey in their respective official capacities.

20.     For this count, Plaintiff properly alleges that the Defendant Secretary of State's directive to the Defendant Janice Winfrey to unlawfully mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the November 3, 2020 presidential primary election violated Plaintiff Davis' right under the equal protection clause of the Fourteenth Amendment to participate in an election on equal terms as other registered voters.

21.     Under the Michigan Election Law, Mich. Comp. Laws §168.1 *et seq*., and specifically Mich. Comp. Laws §168.21, the Defendant Secretary of State is the chief elections officer of the state and has supervisory authority over local election officials, including the

Defendants Detroit City Clerk and Department of Elections, performing their duties.

22.     Under Mich. Comp. Laws §168.31 local election officials, including Defendants Detroit City Clerk and Department of Elections, must follow the Defendant Secretary of State's instructions and/or directives regarding the conduct of elections.

23.     Sometime in April/May 2020, the Defendant Secretary of State advised, from her office in Lansing, MI, the Defendants Detroit City Clerk and Department of Elections that it was lawful for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the August 4, 2020 primary election.

24.     Sometime in April/May 2020, the Defendants Secretary of State and Detroit City Clerk met privately and secretly in Lansing and conspired to develop a plan for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to the registered voters in the City of Detroit for the August 4, 2020 primary election.

25.     Defendants Secretary of State and Defendant Detroit City
Clerk secretly conspired and developed a plan in Lansing to allow
the Defendants Detroit City Clerk and Department of Elections to
unlawfully mass mail unsolicited absentee voter applications to all
of the registered voters in the City of Detroit in an effort to boost
voter turnout amongst the heavily democratic area for both the
August 4, 2020 primary and November 3, 2020 presidential
general election.

26.     Defendant Detroit City Clerk stated publicly at the May 14,
2020 meeting of the Detroit Election Commission that the
Defendant Detroit City Clerk had "talked with the Secretary of
State and she is in support of a predominantly mail-in election.
She suggests every clerk speak with their legal team before doing
such, but she definitely supports it." (**See Approved Minutes
from Detroit Election Commission's May 14, 2020 meeting
attached as Exhibit A**).

27.     Complying with the directive and advice given by the
Defendant Secretary of State, in May/June 2020, the Defendants
Detroit City Clerk and Department of Elections unlawfully mass

mailed unsolicited absentee ballot applications to all of the registered voters in the City of Detroit in violation of Mich. Comp. Laws §168.759 and the Michigan Court of Appeals' holding in *Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv denied,* 483 Mich. 907; 762 NW 2d 169 (2009).

28.     Plaintiff Davis publicly objected to the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit.

29.     In late May or early June 2020, Brenda Hill, as a registered voter in the City of Detroit, received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election.

30.     In late May or early June 2020, nonparty Leigh Reed-Pratt, as a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election. (**See The Unsolicited Absentee Voter Application Leigh Reed-Pratt Received from the**

**Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election attached as Exhibit B**).

31.     As a result of the Defendants Detroit City Clerk's and Department of Elections' unlawful actions of mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit, there was a HUGE increase in voter turnout in the Democratic stronghold in the City of Detroit for the August 4, 2020 primary election.

32.     In an effort to increase the voter turnout in the Democratic stronghold for the impending November 3, 2020 presidential general election, sometime in August 2020 after the August 4, 2020 primary election, the Defendant Secretary of State met privately in Lansing with Defendant Detroit City Clerk  and directed and advised the Defendant Detroit City Clerk that the Defendant Detroit City Clerk had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit who did not return an absentee voter application in the August 4, 2020 primary election.

33.     In early September 2020, complying with the directive and advice given by the Defendant Secretary of State, the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailed absentee voter applications to registered voters in the City of Detroit for the impending November 3, 2020 presidential general election.

34.     On or about Tuesday, September 15, 2020, Brenda Hill received, via U.S. Mail, at her home residence an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election. (**See Unsolicited Absentee Voter Application Brenda Hill received from Defendants Detroit City Clerk and Department of Elections for the November 3, 2020 general election attached as Exhibit C**).

35.     On or about September 14, 2020, Leigh Reed-Pratt, a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election.

36.     However, prior to the Defendants' unlawful actions of mass mailing unsolicited absentee voter applications to the registered voters in the City of Detroit, Plaintiff Davis publicly objected to the Defendants Detroit City Clerk and Department of Elections engaging in such unlawful conduct.

37.     On August 26, 2020, Plaintiff Davis spoke at length with Alecia Brown, Interim Deputy Director of Elections for the City of Detroit, about a number of election-related matters including the Defendant Detroit City Clerk's intentions to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general election.

38.     On August 26, 2020, Plaintiff Davis also spoke with Akilah Williams, an elections clerk in the Detroit City Clerk's office, regarding the Detroit City Clerk's internal operations for handling absentee ballot requests.

39.     On August 26, 2020, both Alecia Brown and Akilah Williams advised Plaintiff Davis that it was their understanding that the Defendant Detroit City Clerk Janice Winfrey was preparing to

mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 general election, just as she had done for the August 4, 2020 primary election.

40. That same day, Brenda Hill was also advised by a local election official purportedly affiliated with the Defendant Detroit City Clerk's office that the Defendant Detroit City Clerk was preparing to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general election.

41. Upon learning of this disturbing information, Plaintiff Davis and Brenda Hill requested attorney Paterson to send a written request to Defendant Secretary of State and the State Director of Elections requesting the Defendant Secretary of State to properly advise the Defendant Detroit City Clerk as to the proper methods of conducting the November 3, 2020 presidential general election with respect to mailing of absentee voter applications to registered voters in the City of Detroit.

42.      On August 27, 2020, on behalf of Plaintiff Davis and Brenda
Hill, attorney Paterson emailed Defendant Secretary of State and
the State Director of Elections a written request respectfully
requesting for the Defendant Secretary of State to advise the
Detroit City Clerk and her staff on the proper methods of
conducting the November 3, 2020 presidential general election.
**(See Attorney Paterson's August 27, 2020 Email to
Defendants attached as Exhibit D**).

43.      Because of the urgency of the matter and the exigencies of
the impending November 3, 2020 general election, Attorney
Paterson's August 27, 2020 written request requested a response
from the Defendants by 3 p.m. on August 27, 2020. (**See Attorney
Paterson's August 27th and 28th, 2020 Email to Defendant
Secretary of State attached as Exhibit D**).

44.      As expected, attorney Paterson did not receive a response to
Plaintiff Davis' and Brenda Hill's request by 3 p.m. on August 27,
2020.  Consequently, later that same day at approx. 4:27 p.m.,
attorney Paterson sent the Defendant Secretary of State a follow-
up email requesting a written response by 10 a.m. on August 28,

2020. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit D**).

45.     Again, as expected, Defendant Secretary of State did **not** provide a written response to Plaintiff Davis' and Brenda Hill's written request.  Therefore, Defendant Secretary of State's refusal to provide a written response by the deadline set forth in the request constituted a denial of Plaintiff Davis and Brenda Hill's written request. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendants attached as Exhibit D**).

46.     MCL §168.31(1)(b) provides:

> The **secretary of state *shall do*** all of the following:
>
> (b) **Advise and direct local <u>election</u> officials as to the proper methods of conducting elections**. (emphasis supplied)

47.     Plaintiff Davis, who is a resident and registered voter in the City of Highland Park, did not receive an unsolicited absentee voter application through the mail from the Highland Park City Clerk.

48.     The Highland Park City Clerk did not mass mail unsolicited absentee voter applications to registered voters in the City of Highland Park.

49.     The Defendant Secretary of State did not advise the Highland Park City Clerk she had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Highland Park for the upcoming November 3, 2020 presidential general election.

50.     The Highland Park City Clerk advised Plaintiff Davis that if he desired to vote by absentee ballot in the upcoming November 3, 2020 general election, Plaintiff Davis would have to comply with the provisions of Michigan Election Law, specifically, Mich.Comp.Laws §168.759.

51.     On October 5, 2020, in accordance with Mich.Comp.Laws §168.759(5), Plaintiff Davis personally appeared at his local city clerk's office in the City of Highland and verbally requested an absentee voter application.

52.     Pursuant to Mich.Comp.Laws §168.759(6), after receiving his absentee voter application, Plaintiff Davis immediately filled

out his absentee voter application and submitted to the Highland Park City Clerk on site.

53.     Pursuant to Mich.Comp.Laws §168.761(1), after verifying Plaintiff Davis' signature and identity, the Highland Park City Clerk proceeded with providing Plaintiff Davis with an absentee ballot for the November 3, 2020 general election.

54.     Plaintiff Davis immediately voted his absentee ballot at the Highland Park City Hall and pursuant to Mich.Comp.Laws §168.764a(b), Plaintiff Davis personally delivered and returned his voted absentee ballot to the Highland Park City Clerk on October 5, 2020.

55.     Plaintiff Davis, who is a life-long democrat, voted for former Vice President Joe Biden and U.S. Senator Kamala Harris for President and Vice President of the United States.

56.     Plaintiff Davis, who is a life-long democrat, also voted for Mary Kelly, who was nominated by the Michigan Republican Party, for the Michigan Supreme Court.

57.     The Defendant Secretary of State's directive to the Defendants Janice Winfrey and Department of Elections to mass

mail unsolicited absentee voter applications to the registered

voters in the City of Detroit was contrary to Michigan law.

58.    The Defendant Secretary of State's directive to the

Defendants Janice Winfrey and Department of Elections to mass

mail unsolicited absentee voter applications to all of the registered

voters in the City of Detroit was intended to increase voter

turnout in the predominantly democratic city.

59.    The Defendant Secretary of State did not direct and advise

Plaintiff's local city clerk in the City of Highland Park that she

had the legal authority to mass mail unsolicited absentee voter

applications to all of the registered voters in the City of Highland

Park for the November 3, 2020 general election.

60.    The Defendants' unlawful actions have resulted in Plaintiff

Davis' not being treated on equal terms as other registered voters.

61.    Unlike the registered voters in the City of Detroit, Plaintiff,

as a registered voter in the City of Highland Park, had to strictly

comply with the provisions of Mich.Comp.Laws §168.759 in order

to receive an absentee voter application to apply to vote by

absentee ballot in the upcoming November 3, 2020 general
election.

62.     Defendant Secretary of State's directive to Defendants
Janice Winfrey and Department of Elections was arbitrary and
caused Plaintiff to be treated differently from the registered voters
in the City of Detroit.

63.     Defendants Janice Winfrey and Department of Elections'
actions of unlawfully mailing unsolicited absentee voter
applications to all of the registered voters in the City of Detroit for
the upcoming November 3, 2020 general election was arbitrary.

64.     As further evidence that the Defendants Janice Winfrey and
Department of Elections' actions were arbitrary, the Defendants
Janice Winfrey and Department of Elections have never mailed
unsolicited absentee voter applications to all of the registered
voters in the City of Detroit after the Court of Appeals ruling in
*Taylor v Currie, supra*.

65.     The unlawful actions of the Defendants have caused the
registered voters of the City of Detroit to be treated differently

than the registered voters in other communities, like the Plaintiff

who resides in the City of Highland Park.

**WHEREFORE**, Plaintiff Davis requests this Court enters

judgment against Defendants Secretary of State, Janice Winfrey and

Department of Elections as follows:

    a. compensatory damages in whatever amount above $75,000.00 Plaintiff is found to be entitled;

    b. an award of exemplary and punitive damages;

    c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

    d. a declaration that the Defendants' actions violated Plaintiff Davis' right to equal protection under the law under the Fourteenth Amendment;

    e. a declaration that the Defendants' actions of authorizing and mass mailing absentee voter applications to all of the registered voters in the City of Detroit for the November 3, 2020 general election violated the equal protection clause of the Fourteenth Amendment;

    f. a declaration that the Defendants' actions allowed the registered voters in the City of Detroit to be treated differently than other registered voters in the State of Michigan in violation of the equal protection clause of the Fourteenth Amendment;

    g. a declaration that the Defendants Janice Winfrey and Department of Elections unlawfully mailed unsolicited absentee voter applications to all of the registered voters in the City of Detroit for the November 3, 2020 general election;

    h. a declaration that the Defendant Secretary of State failed to properly advise and direct the Defendants Janice Winfrey and Department of Elections with respect to mailing unsolicited absentee voter applications to

registered voters in the City of Detroit for the November 3, 2020 general election;

i.  enjoin the Defendants from counting and/or tallying absentee ballots procured in the City of Detroit using the unsolicited absentee voter applications mailed by the Defendants Janice Winfrey and Department of Elections for the November 3, 2020 general election; and

j.  an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT II
**Plaintiff Davis' Vote For Mary Kelly For The Michigan Supreme Court Will Be Diluted If Defendant Janice Winfrey Is Allowed To Count Absentee Ballots That Were Issued To Registered Voters Who Used The Unsolicited Absentee Voter Applications That Were Unlawfully Mailed By The Defendants Janice Winfrey and Department of Elections.**

66.  Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

67.  Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.,* this claim is being brought by Plaintiff Davis against Defendants Secretary of State and Janice Winfrey, in their respective official capacities, as the duly elected Secretary of State for the State of Michigan and the duly elected city clerk for the City of Detroit.

68.  Plaintiff seeks an award of damages for this claim/count against the Defendant Secretary of State in her individual capacity.

69.     Plaintiff seeks an award of damages for this claim/count against the Defendant Janice Winfrey in both her official and individual capacities.

70.     For this count, Plaintiff also seeks prospective declaratory and injunctive relief against Defendants Secretary of State and Janice Winfrey in their respective official capacities.

71.     For this count, Plaintiff properly alleges that the Plaintiff's lawfully cast absentee ballot for Mary Kelly for the Michigan Supreme Court will be diluted if the Defendant Janice Winfrey is allowed to tally and count the absentee ballots that were issued using the unsolicited absentee voter applications that were unlawfully mass mailed by the Defendants Janice Winfrey and Department of Elections.

72.     Plaintiff Davis, who is a resident and registered voter in the City of Highland Park, did not receive an unsolicited absentee voter application through the mail from the Highland Park City Clerk.

73.     The Highland Park City Clerk did not mass mail unsolicited

absentee voter applications to registered voters in the City of

Highland Park.

74.     The Defendant Secretary of State did not advise the

Highland Park City Clerk she had the legal authority to mass

mail unsolicited absentee voter applications to registered voters in

the City of Highland Park for the upcoming November 3, 2020

presidential general election.

75.     The Highland Park City Clerk advised Plaintiff Davis that if

he desired to vote by absentee ballot in the upcoming November 3,

2020 general election, Plaintiff Davis would have to comply with

the provisions of Michigan Election Law, specifically,

Mich.Comp.Laws §168.759.

76.     On October 5, 2020, in accordance with Mich.Comp.Laws

§168.759(5), Plaintiff Davis personally appeared at his local city

clerk's office in the City of Highland and verbally requested an

absentee voter application.

77.     Pursuant to Mich.Comp.Laws §168.759(6), after receiving

his absentee voter application, Plaintiff Davis immediately filled

out his absentee voter application and submitted to the Highland Park City Clerk on site.

78.     Pursuant to Mich.Comp.Laws §168.761(1), after verifying Plaintiff Davis' signature and identity, the Highland Park City Clerk proceeded with providing Plaintiff Davis with an absentee ballot for the November 3, 2020 general election.

79.     Plaintiff Davis immediately voted his absentee ballot at the Highland Park City Hall and pursuant to Mich.Comp.Laws §168.764a(b), Plaintiff Davis personally delivered and returned his voted absentee ballot to the Highland Park City Clerk on October 5, 2020.

80.     Plaintiff Davis, who is a life-long democrat, voted for former Vice President Joe Biden and U.S. Senator Kamala Harris for President and Vice President of the United States.

81.     Plaintiff Davis, who is a life-long democrat, also voted for Mary Kelly, who was nominated by the Michigan Republican Party, for the Michigan Supreme Court.

82.     The Defendant Secretary of State's directive to the Defendants Janice Winfrey and Department of Elections to mass

mail unsolicited absentee voter applications to the registered

voters in the City of Detroit was contrary to Michigan law.

83.     The Defendant Secretary of State's directive to the

Defendants Janice Winfrey and Department of Elections to mass

mail unsolicited absentee voter applications to all of the registered

voters in the City of Detroit was intended to increase voter

turnout in the predominantly democratic city.

84.     The Democratic Party is spending an enormous amount of

financial resources to promote the Democratic Party's nominated

candidates for the Michigan Supreme Court.

85.     Recent published media reports have indicated that there has

been a "huge" surge in absentee ballot requests in the City of

Detroit and most political pundits have indicated that the absentee

voters that have requested absentee ballots in the City of Detroit

are largely supporting the democratic endorsed candidates.

86.     Mary Kelly, who was nominated by the Republican Party for

the Michigan Supreme Court, is likely not favored amongst the

democratic base in the City of Detroit.

87.     Therefore, it is safe to assume that the Democratic Party's nominated candidates for the Michigan Supreme Court are likely receive an overwhelming percentage of the votes cast by absentee ballots in the City of Detroit.

88.     The large surge in the requests for absentee ballots in the City of Detroit is due to the Defendants Janice Winfrey and Department of Elections unlawfully mass mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit for the November 3, 2020 general election, which was encouraged, authorized, and approved by the Defendant Secretary of State.

89.     As a result of this "huge" surge in absentee ballot requests in the City of Detroit, the Michigan Legislature just recently enacted legislation amending Michigan Election Law to allow the Defendant Janice Winfrey to begin the process of properly processing and verifying the returned absentee ballots a day earlier.

90.     Those registered voters in the City of Detroit that procured an absentee ballot using the unsolicited absentee voter application

mailed out by the Defendants Janice Winfrey and Department of Elections should not be counted and/or tallied.

91.     If the absentee ballots that were issued to registered voters in the City of Detroit using the unsolicited absentee voter application mailed out by the Defendants Janice Winfrey and Department of Elections are allowed to be counted and tallied, Plaintiff Davis' vote for Mary Kelly for the Michigan Supreme Court will be diluted.

92.     Defendants' actions were deliberate and intentional in an effort to increase voter turnout in the City of Detroit by unlawfully mass mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit.

93.     But for the unlawful mass mailing of unsolicited absentee voter applications to all of the registered voters in the City of Detroit, there would not be a "huge" increase in absentee voting in the City of Detroit for the November 3, 2020 presidential general election.

94.     The "huge" increase in the absentee voting in the City of Detroit for the November 3, 2020 presidential general election is a

direct result of the unlawful mass mailing conducted by the Defendants Janice Winfrey and Department of Elections.

95.     Plaintiff Davis' lawfully cast vote for the Republican candidate for the Michigan Supreme Court will surely be diluted if the absentee ballots procured using the unsolicited absentee voter application mailed out by the Defendants Janice Winfrey and Department of Elections are allowed to be counted.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendants Secretary of State, Janice Winfrey and Department of Elections as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiff is found to be entitled;
b. an award of exemplary and punitive damages;
c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
d. a declaration that the absentee ballots procured in the City of Detroit by using an unsolicited absentee voter application mailed by the Defendants Janice Winfrey and Department of Elections cannot be counted and/or tallied for any race in the November 3, 2020 general election;
e. a declaration that Plaintiff's lawful vote cast for Mary Kelly will be diluted if the Defendant Janice Winfrey was permitted to count and tally the absentee ballots procured in the City of Detroit by using an solicited absentee voter application mailed by the Defendants Janice Winfrey and Department of Elections;
f. a declaration that the absentee ballots procured in the City of Detroit by using a solicited absentee voter application

mailed by the Defendants Janice Winfrey and Department of Elections shall be separated from the other absentee ballots cast in the November 3, 2020 general election;

g. a declaration that the Defendants Janice Winfrey and Department of Elections unlawfully mailed unsolicited absentee voter applications to all of the registered voters in the City of Detroit for the November 3, 2020 general election;

h. a declaration that the Defendant Secretary of State failed to properly advise and direct the Defendants Janice Winfrey and Department of Elections with respect to mailing unsolicited absentee voter applications to registered voters in the City of Detroit for the November 3, 2020 general election;

i. enjoin the Defendants from counting and/or tallying absentee ballots procured in the City of Detroit using the unsolicited absentee voter applications mailed by the Defendants Janice Winfrey and Department of Elections for the November 3, 2020 general election; and

j. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT III
**State-Law Claim-Absentee Ballots Procured In The City Of Detroit Using Unsolicited Absentee Voter Application Mailed By Defendants Janice Winfrey and Department of Elections For November 3, 2020 General Election Cannot Be Counted And/Or Tallied By Defendants.**

96.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

97.     This state-law claim for declaratory judgment is being brought by Plaintiff Davis against Defendants Janice Winfrey and

Department of Elections (collectively referred to herein as "**City of Detroit Defendants**") pursuant to MCR 2.605.

98.     This Court has the discretion under 28 U.S.C. §1367 to exercise supplemental jurisdiction over Plaintiff Davis' state-law claim for declaratory judgment pursuant to MCR 2.605.

99.     An actual controversy exists between the Plaintiff and the City of Detroit Defendants.

100.    Plaintiff believes the City of Detroit Defendants lack the statutory legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for any election.

101.    Plaintiff believes the City of Detroit Defendants lacked the statutory legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the November 3, 2020 presidential general election.

102.    The City of Detroit Defendants, based upon the advice and directives given by the Defendant Secretary of State, believe they had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the

November 3, 2020 presidential general election, as evident by their actions.

103.     The Court needs to declare the rights of the parties and properly interpret the provisions of Michigan Election Law, specifically being Mich. Comp. Laws §168.759, and the Michigan Court of Appeals' holding in *Taylor v Currie*.

104.     Absentee ballots procured by using the unsolicited absentee voter applications unlawfully mailed by the City of Detroit Defendants for the November 3, 2020 presidential general election should not be counted and/or tallied.

105.     Absentee ballots procured by using the unsolicited absentee voter applications unlawfully mailed by the City of Detroit Defendants for the November 3, 2020 presidential general election should be separated from the other lawfully cast absentee ballots.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendants Janice Winfrey and Department of Elections as follows:

> a. a declaration that the absentee ballots procured in the City of Detroit by using an unsolicited absentee voter application mailed by the Defendants Janice Winfrey and

Department of Elections cannot be counted and/or tallied for any race in the November 3, 2020 general election;

b. a declaration that the absentee ballots procured in the City of Detroit by using an unsolicited absentee voter application mailed by the Defendants Janice Winfrey and Department of Elections shall be separated from the other absentee ballots cast in the November 3, 2020 general election;

c. a declaration that the Defendants Janice Winfrey and Department of Elections lacked the statutory legal authority and unlawfully mailed unsolicited absentee voter applications to all of the registered voters in the City of Detroit for the November 3, 2020 general election;

d. enjoin the Defendants from counting and/or tallying absentee ballots procured in the City of Detroit using the unsolicited absentee voter applications mailed by the Defendants Janice Winfrey and Department of Elections for the November 3, 2020 general election;

e. an award of costs and attorney's fees; and

f. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT IV
## State-Law Claim-Public Act 177 of 2020 Is A Special or Local Act That Was Not Properly Enacted In Accordance With Mich.Const.1963, art. IV, §29.

106. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

107. This state-law claim for declaratory judgment is being brought by Plaintiff Davis against Defendants Janice Winfrey and

Department of Elections (collectively referred to herein as "**City of Detroit Defendants**") pursuant to MCR 2.605.

108.    This Court has the discretion under 28 U.S.C. §1367 to exercise supplemental jurisdiction over Plaintiff Davis' state-law claim for declaratory judgment pursuant to MCR 2.605.

109.    An actual controversy exists between the Plaintiff and the City of Detroit Defendants.

110.    In response to the "huge" increase in absentee voter ballot requests for the City of Detroit, on October 6, 2020, Michigan Governor Gretchen Whitmer formally signed into law Public Act 177 of 2020 that allows the Defendant Janice Winfrey and other city and township clerks with populations of 25,000 residents or more to begin processing returned absentee ballots a day before the November 3, 2020 general election.

111.    Specifically, Public Act 177 of 2020 ("PA 177") added subsection 6 to Mich.Comp.Laws §168.765 of Michigan Election Law.

112.    PA 177 took immediate effect on October 6, 2020.

113.    Mich.Comp.Laws §168.765(6), as amended by PA 177, provides in relevant part:

> (6) *For the November 3, 2020 general election only, if the clerk of a city or township with a population of at least 25,000* provides written notice in compliance with this subsection to the secretary of state 20 days or more before election day, that city or township clerk, or his or her authorized designee, may between the hours of 10a.m. and 8 p.m. on the day before election day perform certain absent voter ballot pre-processing activities as described in this subsection. The written notice provided to the secretary of state must include the location and hours that the absent voter ballot return envelopes will be opened in that city or township. The secretary of state shall post any written notice received from the clerk of a city or township under this subsection on the department of state website. In addition, the clerk of the city or township shall post the written notice provided to the secretary of state on the city or township website. The board of election commissioners shall appoint election inspectors to the location where absent voter ballot return envelopes will be opened in that city or township not less than 21 days or more than 40 days before the day at which they are to be used. (emphasis supplied).

114.    Upon information and belief, in accordance with Mich.Comp.Laws §168.765(6) the Defendant Janice Winfrey will be timely providing notice to the Defendant Secretary of State to be authorized to begin processing the returned absentee ballots one day before the November 3, 2020 general election.

115.    Notably, however, Mich.Comp.Laws §168.765(6) does not apply to all city and township clerks.

116.    Mich.Comp.Laws §168.765(6) only applies *"if the clerk of a city or township with a population of at least 25,000."* (emphasis supplied).

117.    Plaintiff's local city clerk in the City of Highland Park would not be able to process the returned absentee ballots a day before the November 3, 2020 general election.

118.    Like the City of Detroit, the City of Highland Park has also seen a relatively large increase of absentee voter ballot requests.

119.    However, because a new federal census will not be completed prior to the November 3, 2020 general election, Plaintiff's local city clerk would not be able to qualify to apply to the Defendant Secretary of State to begin to process returned absentee ballots a day before the November 3, 2020 general election.

120.    Because other local city and township clerks will not be able to qualify due to the deadline set forth in the amended statute, PA 177 constitutes as a local or special act.

121.    Mich.Const.1963, art. IV, §29, requires special or local acts to be "approved by two-thirds of the members elected to and serving in each house ***and by a majority of the electors voting thereon in the district affected***." (emphasis supplied).

122.    As noted, PA 177 took immediate effect on October 6, 2020 after the Governor signed it into law.

123.    According to the official journals of both the Michigan Senate and House of Representatives, PA 177 was approved by two-thirds of the members elected to and serving in the House of Representatives and the Senate.

124.    However, prior to going into effect, PA 177 was **not** approved by a majority of the registered electors in the various cities and townships with at least 25,000 residents.

125.    PA 177 is a local or special act because other municipalities, like the City of Highland Park, cannot qualify prior to the November 3, 2020 general election.

126.    The amendments instituted with the enactment of PA 177 only applies for the November 3, 2020 general election.

127. The population requirement set forth under Mich.Comp.Laws §168.765(6), as amended by PA 177, should be severed.

128. The population requirement set forth under Mich.Comp.Laws §168.765(6), as amended by PA 177, classifies PA 177 a local or special act.

129. Without the population requirement set forth under Mich.Comp.Laws §168.765(6), as amended by PA 177, would be constitutional and would not be subject to the provisions of Mich.Const.1963, art. IV, §29.

130. Severing the population requirement set forth under Mich.Comp.Laws §168.765(6), as amended by PA 177, will allow **all** city and township clerks to take advantage of the opportunity for local city and township clerks to begin processing the returned absentee ballots one day before the November 3, 2020 general election.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendants Janice Winfrey and Department of Elections as follows:

a. a declaration that Mich.Comp.Laws §168.756(6), as amended by PA 177, is a local or special act under Mich.Const.1963, art. IV, §29;

b. a declaration that Mich.Comp.Laws §168.756(6), as amended by PA 177, violates Mich.Const.1963, art. IV, §29 because it took effect without a vote of the registered from the cities and townships that have at least 25,000 residents;

c. a declaration that the population requirement under Mich.Comp.Laws §168.756(6), as amended by PA 177, should be severed and stricken from PA 177;

d. an award of costs and attorney's fees; and

e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: October 14, 2020               Respectfully submitted,

                                      */s/ ANDREW A. PATERSON*
                                      ANDREW A. PATERSON (P18690)
                                      Attorney for Plaintiff
                                      2893 E. Eisenhower Pkwy
                                      Ann Arbor, MI 48108
                                      (248) 568-9712
                                      aap43@outlook.com


## JURY DEMAND

Plaintiff, through counsel, respectfully demands a jury trial on all issues triable to a jury.

Dated: October 14, 2020               Respectfully submitted,
                                      */s/ ANDREW A. PATERSON*
                                      ANDREW A. PATERSON (P18690)
                                      Attorney for Plaintiff
                                      2893 E. Eisenhower Pkwy
                                      Ann Arbor, MI 48108
                                      (248) 568-9712
                                      aap43@outlook.com