## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**
          Plaintiff,

Case No. 20-cv-00981

**Hon.**

v.

**JOCELYN BENSON**, in her official and individual capacities as the Secretary of State, and
**JANICE WINFREY,** in her official and individual capacities as the Detroit City Clerk, and
**DETROIT DEPARTMENT OF ELECTIONS,**
          Defendants.

_____/

**ANDREW A. PATERSON (P18690)**
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

**HEATHER S. MEINGAST (P55439)**
ERIK GRILL (64713)
Assistant Attorneys General
Attorneys for Defendant Benson
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
meingasth@michigan.gov
grille@michigan.gov

JAMES D. NOSEDA (P52563)
City of Detroit Law Department
Attorneys for Defendants Winfrey
and Detroit Department of Elections
2 Woodward Ave, 5th Floor
Detroit, MI 48226
(313) 237-5032
cunninghamp@detroitmi.gov

_____/

## PLAINTIFF DAVIS' EMERGENCY *EX PARTE* MOTION FOR TERMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS WITH RESPECT TO COUNT I OF COMPLAINT (ECF NO 1).

**NOW COMES** Plaintiff, ROBERT DAVIS, by and through his attorney, ANDREW A. PATERSON, and for his Emergency *Ex Parte* Motion for Temporary Restraining Order, or in the alternative, Motion for Preliminary Injunction Against Defendants With Respect To Count V of the Complaint (ECF No. 1), states as follows:

Plaintiff Robert Davis ("Plaintiff Davis") respectfully moves this Honorable Court to GRANT his Emergency *Ex Parte* Motion for Temporary Restraining Order (TRO), or in the alternative, Motion for Preliminary Injunction against the Defendants to enjoin the Defendants Janice Winfrey and Detroit Department of Elections, and their employees, agents, and representatives, from processing, counting, and/or comingling the returned absentee ballots that were procured using the unsolicited absentee voter application mass mailed by the Defendants Janice Winfrey and Detroit Department of Elections to registered voters in the City of Detroit and requiring the Defendants to simply set aside—without counting—those returned absentee ballots that were procured using the unsolicited absentee voter applications unlawfully mailed by the Defendants Janice Winfrey and Detroit Department of Elections.

Pursuant to the Michigan Court of Appeals holding in *Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv denied*, 483 Mich. 907; 762 NW 2d 169 (2009), the Defendants Janice Winfrey and Detroit Department of Elections lacked the statutory authority to mass mail unsolicited absentee voter applications to registered voters for the upcoming November 3, 2020 general election.  Consequently, this Court must determine whether the returned absentee ballots procured using the unsolicited absentee voter applications unlawfully mailed by the Defendants Janice Winfrey and Detroit Department of Elections can be counted, processed and tallied.

## A. <u>Necessity for Immediate Consideration</u>

**There is an immediate need for the Court to address the merits of Plaintiff Davis' instant emergency motion ASAP. Beginning Monday, November 2, 2020**, in accordance with Mich.Comp.Laws §168.759(6), as amended by the recently enacted Public Act 177 of 2020, the Defendants Janice Winfrey and Detroit Department of Elections will begin processing the returned absentee ballots. (**See Notice Issued By Defendants Regarding Processing**

**Returned Absentee Ballots attached as Exhibit A; see also Public Act 177 of 2020 attached as Exhibit B**).

Therefore, a decision on the merits of Plaintiff Davis' instant emergency motion **MUST occur prior to Monday, November 2, 2020**.

### B. <u>Notice To Defendant And Opposing Council</u>

On October 29, 2020, Plaintiff Davis' counsel provided notice of the filing of the instant emergency to counsel for the Defendants via email. Also, on October 29, 2020, Plaintiff's counsel emailed Defendants' counsel a copy of Plaintiff's Emergency Motion for TRO/Preliminary Injunction.

### C. <u>Concurrence</u>

The undersigned counsel certifies that counsel communicated in writing with opposing counsel for all of the Defendants, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; and opposing counsel thereafter either expressly denied concurrence and/or did not timely respond to Plaintiff's counsel's request for concurrence.

## CONCLUSION

**WHEREFORE**, for the reasons specified in the attached Brief in Support, Plaintiff Davis respectfully requests this Court to enter an order GRANTING his Emergency *Ex Parte* Motion for Temporary Restraining Order (TRO), or in the alternative, Motion for Preliminary Injunction with respect to Count I of the complaint against the Defendants Jocelyn Benson enjoining the Defendants Janice Winfrey and Detroit Department of Elections, and their employees, agents, and representatives, from processing, counting, tallying, and/or comingling the returned absentee ballots that were procured using the unsolicited absentee voter application mass mailed by the Defendants Janice Winfrey and Detroit Department of Elections to registered voters in the City of Detroit, ordering the Defendants Janice Winfrey and Detroit Department of elections to simply set aside—without counting—the returned absentee ballots procured using the unsolicited absentee voter applications unlawfully mailed by Defendants Janice Winfrey and Detroit Department of Elections or granting any other relief the Court deems appropriate.

Dated: October 29, 2020          Respectfully submitted,
                                  */s/ ANDREW A. PATERSON*
                                 ANDREW A. PATERSON (P18690)
                                 Attorney for Plaintiff
                                 2893 E. Eisenhower Pkwy
                                 Ann Arbor, MI 48108
                                 (248) 568-9712

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**                           Case No. 20-cv-00981
        Plaintiff,                    **Hon.**

v.

**JOCELYN BENSON**, in her official and individual capacities as the
Secretary of State, and
**JANICE WINFREY,** in her official and individual capacities as the
Detroit City Clerk, and
**DETROIT DEPARTMENT OF ELECTIONS,**
        Defendants.

_____/

| | |
|---|---|
| **ANDREW A. PATERSON (P18690)** | **HEATHER S. MEINGAST (P55439)** |
| Attorney for Plaintiffs | ERIK GRILL (64713) |
| 2893 E. Eisenhower Pkwy | Assistant Attorneys General |
| Ann Arbor, MI 48108 | Attorneys for Defendant Benson |
| (248) 568-9712 | P.O. Box 30736 |
| aap43@outlook.com | Lansing, MI 48909 |
| | (517) 335-7659 |
| | meingasth@michigan.gov |
| | grille@michigan.gov |
| | |
| | JAMES D. NOSEDA (P52563) |
| | City of Detroit Law Department |
| | Attorneys for Defendants Winfrey |
| | and Detroit Department of Elections |
| | 2 Woodward Ave, 5th Floor |
| | Detroit, MI 48226 |
| | (313) 237-5032 |
| | cunninghamp@detroitmi.gov |

_____/

## PLAINTIFF DAVIS' BRIEF IN SUPPORT OF EMERGENCY *EX PARTE* MOTION FOR TERMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS WITH RESPECT TO COUNT I OF COMPLAINT (ECF NO 1).

## STATEMENT OF THE ISSUE PRESENTED

Will Plaintiff Robert Davis suffer immediate and irreparable injury, loss, or damage before the Defendants can be heard in opposition to Plaintiff Davis' instant emergency motion?

Moving Plaintiff Answers:   Yes

## MOST CONTROLLING OR APPROPRIATE AUTHORITIES

**Cases**

*Bush v Gore*, 531 U.S. 98, 104, 121 S.Ct. 525 (2000)

*Reynolds v. Sims,* 377 U.S. 533, 567-68, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)

*Wesberry v. Sanders,* 376 U.S. 1, 7, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964)

*Gray v. Sanders,* 372 U.S. 368, 380, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963);

*Purcell v. Gonzalez*, 549 U.S. 1, 4-5, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006)

*United States v. Classic,* 313 U.S. 299, 315, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)

*United States v. Mosley,* 238 U.S. 383, 386, 35 S.Ct. 904, 59 L.Ed. 1355 (1915)

*Warf v Bd of Elections of Green County, Ky*., 619 F.3d 553, 559 (6th Cir. 2010)

## Introduction

Under the Michigan Election Law, Mich. Comp. Laws §168.1 *et seq.*, and specifically Mich. Comp. Laws §168.21, the Defendant Jocelyn Benson ("Defendant Secretary of State") is the chief elections officer of the state and has supervisory authority over local election officials, including the Defendants Janice Winfrey ("Defendant Detroit City Clerk") and Detroit Department of Elections ("Defendant Department of Elections"), performing their duties. "Under MCL 168.31 local election officials must follow the Secretary of State's instructions regarding the conduct of elections." *Davis v Secretary of State*, ___Mich.App.___; ____ NW2d____ (2020) (Docket No. 354622), slip op at p 6, citing *Hare v Berrien Co Bd of Election Comm'rs*, 373 Mich 526, 531; 129 NW2d 864 (1964).

Sometime in April/May 2020, the Defendant Secretary of State advised, from her office in Lansing, MI, the Defendants Detroit City Clerk and Department of Elections that it was lawful for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the August 4, 2020 primary

election.   Sometime in April/May 2020, the Defendants Secretary of State and Detroit City Clerk met privately and secretly in Lansing and conspired to develop a plan for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to the registered voters in the City of Detroit for the August 4, 2020 primary election.

Defendants Secretary of State and Defendant Detroit City Clerk secretly conspired and developed a plan in Lansing to allow the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter applications to all of the registered voters in the City of Detroit in an effort to boost voter turnout amongst the heavily democratic area for both the August 4, 2020 primary and November 3, 2020 presidential general election. Defendant Detroit City Clerk stated publicly at the May 14, 2020 meeting of the Detroit Election Commission that the Defendant Detroit City Clerk had "talked with the Secretary of State and she is in support of a predominantly mail-in election. She suggests every clerk speak with their legal team before doing such, but she definitely supports it."

**(See Approved Minutes from Detroit Election Commission's May 14, 2020 meeting attached as Exhibit C**).

Complying with the directive and advice given by the Defendant Secretary of State, in May/June 2020, the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailed unsolicited absentee ballot applications to all of the registered voters in the City of Detroit in violation of Mich. Comp. Laws §168.759 and the Michigan Court of Appeals' holding in *Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv denied*, 483 Mich. 907; 762 NW 2d 169 (2009). Plaintiff Davis publicly objected to the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit.

In late May or early June 2020, Brenda Hill, as a registered voter in the City of Detroit, received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election. In late May or early June 2020, nonparty Leigh Reed-Pratt, as a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the

Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election. (**See The Unsolicited Absentee Voter Application Leigh Reed-Pratt Received from the Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election attached as Exhibit D**).

As a result of the Defendants Detroit City Clerk's and Department of Elections' unlawful actions of mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit, there was a HUGE increase in voter turnout in the Democratic stronghold in the City of Detroit for the August 4, 2020 primary election.  In an effort to increase the voter turnout in the Democratic stronghold for the impending November 3, 2020 presidential general election, sometime in August 2020 after the August 4, 2020 primary election, the Defendant Secretary of State again met privately in Lansing with Defendant Detroit City Clerk  and directed and advised the Defendant Detroit City Clerk that the Defendant Detroit City Clerk had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Detroit who did not return an absentee voter application in the August 4, 2020 primary election.

In early September 2020, complying with the directive and advice given by the Defendant Secretary of State, the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailed absentee voter applications to registered voters in the City of Detroit for the impending November 3, 2020 presidential general election. On or about Tuesday, September 15, 2020, Brenda Hill received, via U.S. Mail, at her home residence an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election. (**See Unsolicited Absentee Voter Application Brenda Hill received from Defendants Detroit City Clerk and Department of Elections for the November 3, 2020 general election attached as Exhibit E**). On or about September 14, 2020, Leigh Reed-Pratt, a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election.

However, prior to the Defendants' unlawful actions of mass mailing unsolicited absentee voter applications to the registered voters

in the City of Detroit, Plaintiff Davis publicly objected to the Defendants Detroit City Clerk and Department of Elections engaging in such unlawful conduct. On August 26, 2020, Plaintiff Davis spoke at length with Alecia Brown, Interim Deputy Director of Elections for the City of Detroit, about a number of election-related matters including the Defendant Detroit City Clerk's intentions to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general election.

On August 26, 2020, Plaintiff Davis also spoke with Akilah Williams, an elections clerk in the Detroit City Clerk's office, regarding the Detroit City Clerk's internal operations for handling absentee ballot requests. On August 26, 2020, both Alecia Brown and Akilah Williams advised Plaintiff Davis that it was their understanding that the Defendant Detroit City Clerk Janice Winfrey was preparing to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 general election, just as she had done for the August 4, 2020 primary election.

That same day, Brenda Hill was also advised by a local election official purportedly affiliated with the Defendant Detroit City Clerk's

office that the Defendant Detroit City Clerk was preparing to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general election.  Upon learning of this disturbing information, Plaintiff Davis and Brenda Hill requested attorney Paterson to send a written request to Defendant Secretary of State and the State Director of Elections requesting the Defendant Secretary of State to properly advise the Defendant Detroit City Clerk as to the proper methods of conducting the November 3, 2020 presidential general election with respect to mailing of absentee voter applications to registered voters in the City of Detroit.

On August 27, 2020, on behalf of Plaintiff Davis and Brenda Hill, attorney Paterson emailed Defendant Secretary of State and the State Director of Elections a written request respectfully requesting for the Defendant Secretary of State to advise the Detroit City Clerk and her staff on the proper methods of conducting the November 3, 2020 presidential general election.  (**See Attorney Paterson's August 27, 2020 Email to Defendants attached as Exhibit F**).  Because of the urgency of the matter and the exigencies of the impending November 3,

2020 general election, Attorney Paterson's August 27, 2020 written request requested a response from the Defendants by 3 p.m. on August 27, 2020. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit F**).

As expected, attorney Paterson did not receive a response to Plaintiff Davis' and Brenda Hill's request by 3 p.m. on August 27, 2020. Consequently, later that same day at approx. 4:27 p.m., attorney Paterson sent the Defendant Secretary of State a follow-up email requesting a written response by 10 a.m. on August 28, 2020. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit F**).  Again, as expected, Defendant Secretary of State did **not** provide a written response to Plaintiff Davis' and Brenda Hill's written request. Therefore, Defendant Secretary of State's refusal to provide a written response by the deadline set forth in the request constituted a denial of Plaintiff Davis and Brenda Hill's written request. (**See Attorney Paterson's August 27th and 28th, 2020 Email to Defendants attached as Exhibit F**).

MCL §168.31(1)(b) provides:

The **secretary of state *shall do*** all of the following:

(b) **Advise and direct local election officials as to the proper methods of conducting elections**. (emphasis supplied)

Plaintiff Davis, who is a resident and registered voter in the City of Highland Park, did not receive an unsolicited absentee voter application through the mail from the Highland Park City Clerk._The Highland Park City Clerk did not mass mail unsolicited absentee voter applications to registered voters in the City of Highland Park for the November 3, 2020 general election. The Defendant Secretary of State did not advise the Highland Park City Clerk she had the legal authority to mass mail unsolicited absentee voter applications to registered voters in the City of Highland Park for the upcoming November 3, 2020 presidential general election.  The Highland Park City Clerk advised Plaintiff Davis that if he desired to vote by absentee ballot in the upcoming November 3, 2020 general election, Plaintiff Davis would have to comply with the provisions of Michigan Election Law, specifically, Mich.Comp.Laws §168.759.

On October 5, 2020, in accordance with Mich.Comp.Laws §168.759(5), Plaintiff Davis personally appeared at his local city clerk's office in the City of Highland and verbally requested an absentee voter application. Pursuant to Mich.Comp.Laws §168.759(6), after receiving his absentee voter application, Plaintiff Davis immediately filled out his absentee voter application and submitted to the Highland Park City Clerk on site.  Pursuant to Mich.Comp.Laws §168.761(1), after verifying Plaintiff Davis' signature and identity, the Highland Park City Clerk proceeded with providing Plaintiff Davis with an absentee ballot for the November 3, 2020 general election.

Plaintiff Davis immediately voted his absentee ballot at the Highland Park City Hall and pursuant to Mich.Comp.Laws §168.764a(b), Plaintiff Davis personally delivered and returned his voted absentee ballot to the Highland Park City Clerk on October 5, 2020. Plaintiff Davis, who is a life-long democrat, voted for former Vice President Joe Biden and U.S. Senator Kamala Harris for President and Vice President of the United States.Plaintiff Davis, who is a life-long democrat, also voted for Mary Kelly, who was nominated by the Michigan Republican Party, for the Michigan Supreme Court.

The Defendant Secretary of State's directive to the Defendants Janice Winfrey and Department of Elections to mass mail unsolicited absentee voter applications to the registered voters in the City of Detroit was contrary to Michigan law.  The Defendant Secretary of State's directive to the Defendants Janice Winfrey and Department of Elections to mass mail unsolicited absentee voter applications to all of the registered voters in the City of Detroit was intended to increase voter turnout in the predominantly democratic city.

However, the Defendant Secretary of State did not direct and advise Plaintiff's local city clerk in the City of Highland Park that she had the legal authority to mass mail unsolicited absentee voter applications to all of the registered voters in the City of Highland Park for the November 3, 2020 general election.  The Defendants' unlawful actions have resulted in Plaintiff Davis' not being treated on equal terms as other registered voters in the City of Detroit who applied to vote by absentee ballot.

Unlike the registered voters in the City of Detroit, Plaintiff, as a registered voter in the City of Highland Park, had to strictly comply with the provisions of Mich.Comp.Laws §168.759 in order to receive an

absentee voter application to apply to vote by absentee ballot in the upcoming November 3, 2020 general election.  Defendant Secretary of State's directive to Defendants Detroit City Clerk and Department of Elections was arbitrary and caused Plaintiff to be treated differently from the registered voters in the City of Detroit.  Defendants Detroit City Clerk and Department of Elections' actions of unlawfully mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit for the upcoming November 3, 2020 general election was arbitrary.

As further evidence that the Defendants Janice Winfrey and Department of Elections' actions were arbitrary, the Defendants Janice Winfrey and Department of Elections have never mailed unsolicited absentee voter applications to all of the registered voters in the City of Detroit after the Court of Appeals ruling in *Taylor v Currie, supra*.  The unlawful actions of the Defendants have caused the registered voters of the City of Detroit to be treated differently than the registered voters in other communities, like the Plaintiff who resides in the City of Highland Park.

## LAW AND LEGAL ANALYSIS

### A.  Issuance of an *Ex Parte* Temporary Restraining Order Pursuant To Fed.R.Civ.P. 65(b), Or In The Alternative, Preliminary Injunction Pursuant To Fed.R.Civ.P. 65(a).

To obtain the extraordinary remedy of a TRO, Plaintiff must "clearly show that immediate and irreparable injury, loss, or damage will result . . . before [Defendant] can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  "The only type of injunctive relief that a district court may issue *ex parte* is a temporary retaining order. Fed.R.Civ.P. 65(b)." *First Tech. Safety Systems, Inc. v Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).  "[T]he same factors [are] considered in determining whether to issue a TRO or a preliminary injunction." *Ohio Republican Party v Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Ne. Ohio Coal. For Homeless & Serv. Emps. Union v Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); see also *Valenti v Snyder*, 853 F.Supp.2d 691 (E.D. Mich. 2012).

When considering a motion for preliminary injunction under Fed. R. Civ. P. 65(a), the Court must weigh the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause

substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.*" Certified Restoration v Dry Cleaning Network, L.L.C. v Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).  Courts are generally required to balance these four factors, and none of the factors, standing alone, is a prerequisite to relief.  *Folden v Kelsey-Hayes, Co.*, 73 F.3d 648, 653 (6th Cir. 1996).

At the preliminary injunction stage, "a plaintiff must show more than a mere possibility of success," ***but need not*** "prove his case in full." *Certified Restoration Dry Cleaning Network*, 511 F.3d at 543 (citations omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir.1997) (citation omitted).  "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for America v Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir.2009)).

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006).  At stake is "the 'fundamental political right' to vote," *Id.* (quoting *Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), which the Sixth Circuit recognizes as "'preservative of all rights.'") *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir.2008) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); see also Harper, 383 U.S. at 670, 86 S.Ct. 1079.

Yet "the problem of equal protection in election processes generally presents many complexities." *Bush v. Gore*, 531 U.S. 98, 109, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). In part, this is because "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Id.* at 104, 121 S.Ct. 525 (citing *Harper*, 383 U.S. at 665, 86 S.Ct. 1079). Thus, the Sixth Circuit has held that "[t]he right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters*, 548 F.3d at 476 (citing *Bush*, 531 U.S. at 104, 121 S.Ct. 525; *Dunn*, 405 U.S. at 336, 92 S.Ct. 995; *Reynolds v.*

*Sims*, 377 U.S. 533, 567-68, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964);

*Wesberry v. Sanders*, 376 U.S. 1, 7, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964);

*Gray v. Sanders*, 372 U.S. 368, 380, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963);

*United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 85 L.Ed. 1368

(1941); *United States v. Mosley*, 238 U.S. 383, 386, 35 S.Ct. 904, 59

L.Ed. 1355 (1915); U.S. CONST. amends. XV, XIX, XXIV, XXVI).

It is well-settled that "[h]aving once granted the right to vote on
equal terms, the State may not, by later arbitrary and disparate
treatment, value one person's vote over that of another." *Bush*, 531 U.S.
at 104-05, 121 S.Ct. 525; see also *League of Women Voters*, 548 F.3d at
477 ("At a minimum, ... equal protection requires 'nonarbitrary
treatment of voters.'" (quoting *Bush*, 531 U.S. at 105, 121 S.Ct. 525)).

If this Honorable Court does not take the extraordinary step of
granting Plaintiff Davis' instant *ex parte* motion for TRO, Plaintiff
Davis' most fundamental right to vote on equal terms as all other voters
will be severely impaired by the unlawful and unconstitutional actions
of the Defendants.

## 1. Likelihood of Success on the Merits

Plaintiff Davis, for the reasons set forth herein, is likely to succeed on the merits pled and alleged in Count 1 of the complaint (ECF No. 1).

### a. Defendant Secretary of State's Directive To Defendants Detroit City Clerk and Department of Elections To Unlawfully Mass Mail Unsolicited Absentee Voter Applications To Registered Voters In The City Of Detroit Caused Plaintiff Davis To Be Treated Differently As A Registered Voter In The City of Highland Park In Violation of The Equal Protection Clause of the Fourteenth Amendment.

It is well-settled that "[o]ur Constitution accords special protection for the fundamental right of voting, recognizing its essential role in the preservati[on] of all rights[.]" *Northeast Ohio Coalition for Homeless v Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (internal citations and quotation marks omitted). Because "[o]ther rights, even the most basic, are illusory if the right to vote is undermined," *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), "'[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise,'" *League of Women Voters v. Brunner*, 548 F.3d 463, 477 (6th Cir.2008) (quoting *Bush v. Gore*, 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)).

As noted, "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05, 121 S.Ct. 525; see also *League of Women Voters*, 548 F.3d at 477 ("At a minimum, ... equal protection requires "nonarbitrary treatment of voters."" (quoting *Bush*, 531 U.S. at 105, 121 S.Ct. 525)).  Therefore, as the Sixth Circuit has instructed, this Court is "guided in [its] analysis by the important requirement that state actions in election processes must not result in 'arbitrary and disparate treatment' of votes." *Hunter v Hamilton County Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011).

The Michigan Legislature prescribed a way for every Michigan voter to vote absentee: by requesting a ballot. Yet the Defendant Secretary of State has now, by arbitrary and disparate treatment, given Detroit voters a leg up over all other voters in the State by encouraging the Defendants Detroit City Clerk and Detroit Department of Elections to mail unsolicited absentee voter applications to all registered voters in the City of Detroit while, at the same time, *not* giving that instruction to clerks in other jurisdictions (or, at a minimum, in the jurisdiction where Plaintiff Davis resides).  Just as in *Bush v. Gore*, the Defendants'

individual and collective actions in this regard have diluted the weight of Plaintiff's vote and have caused Plaintiff, a registered voter in the City of Highland Park, to be treated differently from the registered voters in the City of Detroit.

The remedy Plaintiff seeks—separating the returned absentee ballots procured using the unsolicited absentee voter application unlawfully mailed by the Defendants Detroit City Clerk and Department of Elections from all other returned absentee ballots—is a modest one. It does not mean the returned absentee ballots procured using the unsolicited absentee voter application can never be counted. It simply means that the *status quo* will be maintained until this Court can sort things out.  This can be done in an orderly fashion *after* the election is over and the other votes have been counted.

Here, the Defendants have created an unequal voting procedure whereby the registered voters in the City of Detroit were treated differently than the registered voters in the City of Highland Park, where the Plaintiff resides.  Specifically, the registered voters in the City of Detroit were unlawfully mailed unsolicited absentee voter applications by their local city clerk, Defendant Detroit City Clerk, in

violation of Mich.Comp.Laws §168.759 and the Michigan Court of Appeals' holding in Taylor, supra.  In contrast, Plaintiff and all the other registered voters in the City of Highland Park who desired to vote by absentee ballot had to adhere and strictly comply with the requirements set forth under Mich.Comp.Laws §168.759.

As noted by the U.S. Supreme Court in Bush, "there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied." *Bush*, 531 U.S. at 109.  And again, this "right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104-105. Indeed, "[i]t must be remembered that 'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.* at 105 (quoting *Reynolds,* 377 U.S. at 555).

## 2.  Irreparable Injury

The second element to be determined when deciding to issue a preliminary injunction, is irreparable injury.   "[W]hen reviewing a motion for preliminary injunction, if it's found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."  *ACLU of Kentucky v McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003) (citing *Elrod v Burns,* 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976). "When constitutional rights are threatened or impaired, irreparable injury is presumed. ***A restriction on the fundamental right to vote therefore constitutes irreparable injury***." *Obama for America*, 697 F.3d at 436 (emphasis supplied).

As noted and recognized by another Judge in the Eastern District, "[a]lthough the defendants were reluctant to acknowledge at the hearing that the deprivation of ***an eligible voter's right to have his or her vote counted constitutes irreparable harm***, this Court has no trouble so concluding." *Bay County Democratic Party v Land*, 347 F.Supp.2d 404, 435 (E.D.Mich. 2004) (citing *Bush*, 531 U.S. at 104-105).

In the case at bar, Plaintiff Davis clearly will suffer irreparable harm if a TRO and/or preliminary injunction is not issued. "A plaintiff's

harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir.2002) "However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984)). Plaintiff Davis cannot be fully compensable by monetary damages if his right to vote on equal terms as all other voters is violated.

### 3.  Harm to Others

Issuance of a preliminary injunction presents no harm to others. In fact, the issuance of a preliminary injunction and/or TRO will ensure no harm to others will occur.  As the United States Supreme Court explained in *Purcell v. Gonzalez*, 549 U.S. 1, 4-5, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006), "Court orders affecting elections... can themselves result in voter confusion.... As an election draws closer, that risk will increase."  That is precisely what has occurred in this case.  The Defendant Secretary of State's directive to the Defendants Detroit City

Clerk and Department of Elections to unlawfully mail unsolicited

absentee voter applications to only registered voters in the City of

Detroit created an unfair voting procedure in violation of

Mich.Comp.Laws §168.759.

It is important to note that the Sixth Circuit has held that "the

State will be ***irreparably injured in its ability to execute valid***

***laws, which are presumed constitutional, for keeping ineligible***

***voters from voting***…. ***It is particularly harmful to such interests***

***to have the rules changed at the last minute***." *Summit County*

*Democratic Central and Executive Committee v Blackwell*, 388 F.3d 547,

551 (2004) (emphasis supplied).

Here, strangely enough, the Defendants implemented a ***new***

policy at the "11th hour" that resulted in registered voters in the City of

Detroit being treated differently than other voters in other

municipalities, including but not limited to the City of Highland Park,

which is where the Plaintiff resides.  It is well-settled in Michigan

jurisprudence that local election officials, like Defendants Detroit City

Clerk and Department of Elections do **not** have the statutory authority

under Mich.Comp.Laws §168.759 to mail unsolicited absentee voter applications to registered voters. *Taylor*, 277 Mich.App. at 94-95.

### 4.  Public Interest

The final factor in determining whether or not to issue a preliminary injunction, is the public interest.  "It is always in the public interest to prevent a violation of a party's constitutional rights." *G & V Lounge, Inc. v Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc v DePasquale*, 443 U.S. 368, 383, 99 S. Ct. 2898, 61 L.Ed.2d 608 (1979)).  Moreover, "[t]here is also a ***strong public interest in permitting legitimate statutory processes to operate to preclude voting by those who are not entitled to vote***." *Summit County Democratic Central and Executive Committee v Blackwell*, 388 F.3d 547, 551 (2004) (emphasis supplied). "Finally, there is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the hours immediately preceding the election." *Id*.

In the case at bar, the entry of a TRO and/or Preliminary Injunction will serve the public's interest because it will prevent the

Defendants from violating Mich.Comp.Laws §168.759 and "changing the rules in the hours immediately preceding the election." *Id.*

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Plaintiff Davis respectfully requests this Court to enter an order GRANTING his Emergency *Ex Parte* Motion for Temporary Restraining Order (TRO), or in the alternative, Motion for Preliminary Injunction with respect to Count I of the complaint against the Defendants Jocelyn Benson enjoining the Defendants Janice Winfrey and Detroit Department of Elections, and their employees, agents, and representatives, from processing, counting, tallying, and/or comingling the returned absentee ballots that were procured using the unsolicited absentee voter application mass mailed by the Defendants Janice Winfrey and Detroit Department of Elections to registered voters in the City of Detroit, ordering the Defendants Janice Winfrey and Detroit Department of elections to simply set aside—without counting—the returned absentee ballots procured using the unsolicited absentee voter applications unlawfully mailed by Defendants Janice Winfrey and Detroit

Department of Elections or granting any other relief the Court deems appropriate.

Dated: October 29, 2020       Respectfully submitted,
                                  */s/ ANDREW A. PATERSON*
                                 ANDREW A. PATERSON (P18690)
                                 Attorney for Plaintiff
                                 2893 E. Eisenhower Pkwy
                                 Ann Arbor, MI 48108
                                 (248) 568-9712

## CERTIFICATE OF SERVICE

I, ANDREW A. PATERSON, certify that the foregoing document(s) was filed and served via the Court's electronic case filing and noticing system (ECF) this 29th day of October, 2020, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

                                 Respectfully submitted,

                                 /s/ ANDREW A. PATERSON
                                 ANDREW A. PATERSON (P18690)
                                 Attorney for Plaintiff