UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, et al,

    Plaintiffs,

v.

JOCELYN BENSON, et al,

    Defendants.

Case No. 20-00981
Judge Paul L. Maloney

---

| | |
|---|---|
| James D. Noseda<br>Patrick Cunningham<br>City of Detroit Law Department<br>Attorney for Janice Winfrey and<br>Detroit Department of Elections,<br>Two Woodward Avenue, 5th Floor<br>Coleman A. Young Municipal Ctr.<br>Detroit, MI 48226<br>(313) 237-3057 / 5032<br>nosej@detroitmi.gov<br>cunninghamp@detroitmi.gov<br>P52563<br>P67643 | Andrew A. Paterson<br>Attorney for Plaintiffs<br>2893 E. Eisenhower Pkwy.<br>Ann Arbor, MI 48108<br>aap43@outlook.com<br>(248) 568-9712<br>P18690<br><br>Heather S. Meingast<br>Erik A. Grill<br>Assistant Attorneys General<br>Attorneys for Jocelyn Benson<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7659<br>meingasth@michigan.gov<br>grille@michigan.gov<br>P55439<br>P64713 |

---

MOTION TO DISMISS UNDER RULE 12(b)(6) ON BEHALF OF JANICE WINFREY
AND THE DETROIT DEPARTMENT OF ELECTIONS

## TABLE OF CONTENTS

QUESTIONS PRESENTED ........................................................................................................... 3

TABLE OF AUTHORITIES ......................................................................................................... 4

FACTS ........................................................................................................................................... 5

LAW AND ARGUMENT .............................................................................................................. 7

1.  THE DETROIT DEPARTMENT OF ELECTIONS CANNOT BE SUED FOR MONEY DAMAGES. ................................................................................................................................. 7

  2.  COUNT I OF THE COMPLAINT FAILS TO STATE CLAIM UPON WHICH RELIEF CAN BE GRANTED. ........................................................................................................... 8

3.  PLAINTIFF LACKS STANDING TO PURSUE HIS ALLEGED VOTE DILUTION CLAIM IN COUNT II. ................................................................................................................................ 10

4.  COUNT III, SEEKING A STATE LAW DECLARATORY JUDGMENT THAT BALLOTS NOT BE COUNTED IS MOOT, AND THE COURT SHOULD OTHERWISE DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION. ........................................................................................... 11

CONCLUSION AND RELIEF REQUESTED ........................................................................... 13

## QUESTIONS PRESENTED

1. Must all claims for damages against the Detroit Department of Elections be dismissed because a department of a municipality cannot be sued for money damages?

2. Do Counts I and II of the complaint fail to state a claim upon which relief can be granted?

3. Should the Court decline to exercise supplemental jurisdiction over Count III seeking a state law declaratory judgment that votes cast at the November 3, 2020 election cannot be counted or tallied, or dismiss the claim as moot?

## TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. City of Sturgis,*
   559 F.Supp.2d 837 (W.D.Mich.2008) ............................................................................... 11
*Associated Builders & Contractors v. Dep't of Consumer & Indus. Servs. Dir.,*
   472 Mich. 117 .................................................................................................................... 12
*Brooks v. Rothe,*
   577 F.3d 701 (6th Cir.2009) ............................................................................................... 11
*Bush v. Gore*,
   531 U.S. 98 (2000) ............................................................................................................. 10
*Glenn v Walker*,
   65 Fed. Appx.  (6th Cir. 2003) ............................................................................................. 8
*Haverstick Enterprises, Inc. v Financial Federal Credit, Inc.*,
   32 F.3d 989 .......................................................................................................................... 8
Moore v. Circosta, No.,
   1:20CV911, 2020 WL 6063332 (M.D.N.C. Oct. 14, 2020) .............................................. 11
*Radvansky v. City of Olmsted Falls*,
   395 F.3d 291 (6th Cir. 2005) ................................................................................................ 9
*Reynolds v. Sims*,
   377 U.S. 533, (1964) ............................................................................................................ 9
*Taylor v Currie*,
   277 Mich. App. 85, 743 N.W.2d 571 (2007) ....................................................................... 7
*Vacco v. Quill*,
   521 U.S. 793, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997) ...................................................... 9
*Village of Willowbrook v. Olech*,
   528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) .................................................... 9

Statutes

28 U.S.C. § 1367(c)(3) ............................................................................................................. 11
MCL 168.759 .............................................................................................................................. 7
U.S. Const. Amend. XIV, § 1 ..................................................................................................... 9

Rules

MCR 2.605 ................................................................................................................................ 12

Janice Winfrey and the Department of Elections move under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I, II and III of the complaint for the reasons set forth below.

## FACTS

In this latest of the 5 or more lawsuits filed by Robert Davis challenging the mailing of absent voter ballot application forms, he claims in Count I of the complaint that he has been denied equal protection of law because the Highland Park City Clerk did not mail him an unsolicited application to vote by absentee ballot (hereinafter ("AVB Application"), whereas Detroit voters were sent an AVB Application by the City of Detroit Clerk Janice Winfrey ("Detroit Clerk") and the Detroit Department of Elections ("Elections Department"). Omitted from this complaint is the fact the Mr. Davis was mailed an unsolicited AVB Application by the Michigan Department of Elections, for which he unsuccessfully sued Secretary Benson in the Michigan Court of Claims.

On October 20, 2020, this Court denied plaintiff's motion, under Count I, to enjoin the counting or tallying of AV ballots voted in Detroit by any person who had returned an AVB Application mailed by the City.  In denying that relief, this Court stated:

> Finally, to the extent Plaintiff complains about different treatment, he likely has not stated a claim. Plaintiff contends that Benson instructed the local election officials for the City of Detroit, but not for the City of Highland Park where he is a registered voter. (Compl. ¶ 49.) In the case in the state courts, Benson explained this difference, which was noted in the earlier opinion. "Defendant did not mail absent voter ballot applications to voters in locales where the local election officers planned to send applications to all registered voters[.]" Id. at 1. While Plaintiff might not have received an absentee ballot application from Highland Park, the failure was not because of something these defendants did.  (ECF No. 12, PageID 137-138.)

Count II of the complaint claims that if votes are tallied for AV ballots voted in Detroit by any person who returned an AVB Application mailed by the City, that Mr. Davis' vote for Mary Kelly (a losing candidate for Michigan Supreme Court) will be "diluted." No allegations are

expressly made in Count II that this alleged vote dilution violates a federal law or a constitutional provision. Since Count II incorporates all of Count I, this claim is presumably derivative of the alleged equal protection claim in Count I.

On November 17, 2020, the election results in Detroit were certified by the Wayne County Board of Canvassers. Unofficial statewide election results show that the nominees for the two open seats on Supreme Court received votes as follows: 2,375,229 (McCormack), 1,489,117 (Welch), and 1,253,245 (Kelly). Statewide, candidate Kelly lost to the second place winner by 235,872 votes. The certified total of all votes cast in Detroit for candidates McCormack and Welch was 216,508. (The Court can take judicial notice of this widely available public election data). So, even if every single vote cast in Detroit for the Supreme Court race was disregarded, absentee and in-person, as Mr. Davis appears to seek to avoid "dilution" of his vote for candidate Kelly, she still loses the election -- the upshot of which is that Davis vote dilution claim lacks causation, injury, and damages.

Count III of the complaint seeks a declaratory judgment under state law that no AV Ballots cast in Detroit by any person who had returned an AVB Application mailed by the City can be tallied, that they be separated, that the mailing was unlawful, and that counting be enjoined. Insofar as Count III seeks a declaration that it was illegal to mail the AV Applications, the same claim by Mr. Davis is pending in Case. No. 20-00915 where this Court denied Davis' motion for partial summary judgment, declined to exercise supplemental jurisdiction and dismissed the claim without prejudice so that the issue of state law matter could be decided in state court. (Case No. 20-00915, ECF No. 68.)  The same should occur in this case.

By order dated October 30, 2020, this Court denied without prejudice an emergency Rule 56 motion with respect to Count IV of the complaint claiming a violation of the Michigan constitution,

declined to exercise supplemental jurisdiction, and dismissed the claim without prejudice. (ECF No. 13.)

Like his other case pending before this Court, No. 1:20-cv-915[1], the complaint here does not mention the Michigan Court of Appeals' opinion that the mailing of unsolicited AVB Applications to all voters does not violate *Taylor v Currie*, 277 Mich. App. 85, 743 N.W.2d 571 (2007), MCL 168.759, or the Michigan Constitution's purity of elections clause. The Court of Appeals held that the *Taylor* case, the case exclusively relied upon by plaintiff here, does not apply where (as here, again) applications are sent to all voters and the mailing official is not on the ballot. The Court of Appeals held that MCL 168.759 is permissive and does not control or direct how election officials perform their duties -- in other words the statute does not prohibit an election official (the Detroit Clerk is an election official) from mailing unsolicited AVB Applications. The City Clerk and Elections Department contend that the Court of Appeals decision defeats the claims made in Counts I and II of this lawsuit. But, for the reasons stated below, the Court does not need to reach that conclusion since neither Count I or Count II state a claim upon which relief can be granted.

## LAW AND ARGUMENT

1. THE DETROIT DEPARTMENT OF ELECTIONS CANNOT BE SUED FOR MONEY DAMAGES.

Counts I and II of the complaint seek money damages from the Detroit Clerk sued in her official and individual capacity, which means the City has been sued along with the Clerk. Plaintiff also sues the City's Elections Department. The Elections Department is not a proper party to such claims because a department of a Michigan municipality cannot be sued for

---

[1] Motions to dismiss are pending in that case.

money damages. *Haverstick Enterprises, Inc. v Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n. 1 (6th Cir. 1994); *Glenn v Walker*, 65 Fed. Appx. 54 (6th Cir. 2003).

2. COUNT I OF THE COMPLAINT FAILS TO STATE CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count I of the complaint contends that it was unlawful for the Detroit Clerk to mail unsolicited Applications, and that if absent ballots are counted for voters who returned such an Application form (only Detroit voters)[2], that Davis was denied equal protection of law. In his complaint, like his unsuccessful motion for an injunction, Davis alleges that Secretary Benson "directed" the Detroit Clerk (and only her) to mail those Application forms. (See, ECF No. 6, Page 11, 20, 26, 28). For purposes of this motion, the Court can accept as true (if plausible) the well pled allegations of the complaint. That said, plaintiff still must allege a claim recognized under the law.

Here, the operative allegation of Count I (and Count II for that matter) is that the alleged directive to mail AVB Applications **by Secretary Benson** to Clerk Winfrey and the Elections Department was arbitrary and that it caused Davis, a Highland Park voter, to be treated differently from Detroit voters. (See ECF No. 1 PageID 18 at ¶¶ 58, 59, and PageID 19 at ¶¶ 62, 65). On its face, Count I appears to allege that it was the Secretary's "directive" that caused the equal protection violation. Notably missing from the complaint is any allegation of fact or law that sending a blank form to Detroit voters (the same form received by every other voter in this State, had any impact upon, injured, or in any way affected Mr. Davis' absentee ballot vote (or that of any other voter).

---

[2] And, inexplicably only for Detroit having done so despite other clerks in the State also having mailed application forms.

Like the claimed due process violations in his other case before this Court, and like his claims in all his other cases in state and federal courts, the equal protection claims made here are premised upon Davis' belief that the mailing of unsolicited AVB Application forms is prohibited by state law (which the City defendants contend is not correct). Davis believes that a mere allegation of a statutory violation gives rise, ipso facto, to constitutional claims. Yet, based upon that single and oft repeated contention, Davis alleges that the alleged violation of state law denied him equal protection of law with respect to his right to vote. Just saying the words, equal protection, does not state a claim. Davis claims that the Clerk's mailing was unlawful, but he does not allege facts to support a claimed denial of equal protection, and there is no law that supports his claimed denial of equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). The States cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one person differently from others similarly situated without any rational basis for the difference. *Id.; Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Under this general rubric, the complaint fails to allege that Clerk Winfrey or the Elections Department treated Davis in any manner whatsoever, differently or otherwise. The City defendants directed no action towards Davis. That Davis' local clerk did not mail him an unsolicited AVB Application, or was not "directed" to do so as alleged, does not state a claim against the City defendants. Davis has not alleged any facts to

9

show the mailing burdened his right to vote, targeted a suspect class, or treated him differently from similarly situated persons.

Courts have recognized two types of equal protection claims in connection with the right to vote: (i) vote dilution by gerrymandering (see, e.g., *Reynolds v. Sims*, 377 U.S. 533, 554, (1964), and (ii) arbitrary and disparate treatment whereby the government values one person's vote over that of another (e.g. *Bush v. Gore*, 531 U.S. 98, 104-105 (2000)). Neither type of claim can be discerned from the allegations made in the complaint. This is not surprising since every voter in Michigan (except those on the permanent list to vote absentee), was mailed an unsolicited AVB Application – by either the Secretary of State or by their local clerk. It is impossible to discern an equal protection violation where all voters received an unsolicited AVB Application form. The source of the form has no impact of a person's vote – except insofar as Davis believes that a local clerk cannot make such a mailing.

Count I is yet another poorly crafted attempt to have this Court rule that it was "illegal" under state law to mail unsolicited AVB Applications[3] – an invitation that that this Court has already declined to do in Davis' other lawsuit.

3. PLAINTIFF LACKS STANDING TO PURSUE HIS ALLEGED VOTE DILUTION CLAIM IN COUNT II.

Count II of the complaint alleges that Davis' vote for a Michigan Supreme Court candidate will be diluted because the all of the defendants' actions were a deliberate attempt to increase voter turnout. (ECF No 1, PageID 27 at ¶¶ 91 – 95.) No court appears to have held that efforts to increase lawful voter participation in an election violates Equal Protection (or any other law). Count II does

---

[3] See for example the prayer for relief "g."( ECF No. 1 PageID 20).

not state a vote dilution claim for the reasons given in this Court's October 20, 2020 ruling in Case No. 20-915 (ECF No. 59, Case No. 1:20-cv-915). This is not a gerrymandering case. And this Court has observed that most courts have not allowed a vote dilution claim where the injury, like this case, is general and not personal. (ECF No. 59, PageID 3, Case No. 1:20-cv-915). More importantly, even if such a claim was available, no allegation is made or can be made that the votes cast by persons sent an unsolicited AVB Application (insofar they could ever be identified) are unlawful or illegal. All that Davis does allege is that the mailing of the Applications was unlawful (which defendants dispute). Count II, like Count I, is a poorly crafted attempt to have this Court rule that it the City defendants violated state law by mailing the applications. But Count II does not state an equal protection claim.[4]

4. COUNT III, SEEKING A STATE LAW DECLARATORY JUDGMENT THAT BALLOTS NOT BE COUNTED IS MOOT, AND THE COURT SHOULD OTHERWISE DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION.

Count III of the complaint (ECF No. 1, PageID 29-32), seeks a state-law declaratory judgment that Clerk Winfrey and the Elections Department cannot count or tally any vote for any race on any ballot cast by a person who was sent a AVB by returning an unsolicited AVB Application. It also seeks, yet again, a declaration under state law that it was unlawful to mail the unsolicited Applications, a claim over which this Court has already declined to exercise supplemental jurisdiction in Davis' other case.

---

[4] Davis also likely lacks standing to pursue this claim, given that the alleged harm is unduly speculative and impermissibly generalized because all voters in a state are affected. See, *Moore v. Circosta*, No. 1:20CV911, 2020 WL 6063332, at *14 (M.D.N.C. Oct. 14, 2020).

Count III of the complaint seeks a declaratory judgment under state law. If the Court dismisses Counts I and II, which supply the only ground for federal jurisdiction over the City defendants, the Court should decline to exercise supplemental jurisdiction and dismiss Count III without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir.2009), *Allen v. City of Sturgis,* 559 F.Supp.2d 837, 852 (W.D.Mich.2008) (" [A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.' ") .

Even if this Court were to exercise supplemental jurisdiction over Count III, the relief sought cannot be granted. To obtain declaratory relief under Michigan law, there must be a justiciable controversy. In order for declaratory relief to be granted, MCR 2.605 requires an "actual controversy. "[T]he rule requires that there be 'a case of actual controversy' and that a party seeking a declaratory judgment be an 'interested party,' thereby incorporating traditional restrictions on justiciability such as standing, ripeness, and mootness." *Associated Builders & Contractors v. Dep't of Consumer & Indus. Servs. Dir.*, 472 Mich. 117, 125, overruled on other grounds by *Lansing Sch. Ed. Ass'n, MEA/NEA v. Lansing Bd. of Ed.*, 487 Mich. 349 (2010).

While Count III is couched as a claim for declaratory relief, what it actually seeks is to enjoin the City defendants from counting lawfully cast ballots. The Court can take judicial notice of the well-publicized fact that the City of Detroit completed the counting / tally of votes on November 5, 2020. The unofficial tally, along with the ballots cast, was delivered to the Wayne County Board of Canvassers which completed its canvass on November 17, 2020. The relief sought in Count III is moot and, therefore, the claim must be dismissed.

CONCLUSION AND RELIEF REQUESTED

For all of the reasons stated above, Count I and Count II of the complaint should be dismissed. The Court should therefore decline to exercise supplemental jurisdiction over the state law claim in Count III, or alternatively dismiss the claim as moot.

> Janice Winfrey,
> Detroit Department of Elections
>
> By: /s/ James D. Noseda
> City of Detroit Law Department
> Two Woodward Avenue, 5th Floor
> Coleman A. Young Municipal Ctr.
>  Detroit, Michigan 48226
> (313) 237-5032
> nosej@detroitmi.gov
> P52563

**Certificate of Service**

I certify that on November 18, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties.

/s/James D. Noseda