## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**                           Case No. 20-cv-00981
      Plaintiff,

                                   **Hon. Paul Maloney**

v.

**JOCELYN BENSON**, in her official and individual capacities as the Secretary of State, and
**JANICE WINFREY,** in her official and individual capacities as the Detroit City Clerk,
**DETROIT DEPARTMENT OF ELECTIONS,** and
**BRENDA GREEN,** in her official capacity as the Highland Park City Clerk,
      Defendants.

_____/

| | |
|---|---|
| **ANDREW A. PATERSON (P18690)** | **HEATHER S. MEINGAST (P55439)** |
| Attorney for Plaintiffs | ERIK GRILL (64713) |
| 2893 E. Eisenhower Pkwy | Assistant Attorneys General |
| Ann Arbor, MI 48108 | Attorneys for Defendant Benson |
| (248) 568-9712 | P.O. Box 30736 |
| aap43@outlook.com | Lansing, MI 48909 |
| | (517) 335-7659 |
| | meingasth@michigan.gov |
| | grille@michigan.gov |
| | |
| | JAMES D. NOSEDA (P52563) |
| | City of Detroit Law Department |
| | Attorneys for Defendants Winfrey |
| | and Detroit Department of Elections |
| | 2 Woodward Ave, 5th Floor |
| | Detroit, MI 48226 |
| | (313) 237-5032 |
| | cunninghamp@detroitmi.gov |

_____/

## FIRST-AMENDED VERIFIED COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, ROBERT DAVIS[1], by and through his attorney, ANDREW A. PATERSON, and for his First-Amended Verified Complaint and Jury Demand ("Amended Complaint"), states as follows:

## I. NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and, the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. 1983; 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1367.

3. This Court also has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

4. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391(b)(1). Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

---

[1] Prior to filing the instant action, Plaintiff Robert Davis advised counsel that he may want to proceed *in propria persona* in this case.

5. Public officials sued in their official capacity "reside" in the county where they perform their official duties. *See O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972).

6. Defendant Jocelyn Benson's principal office is in Lansing, MI, and Defendant Jocelyn Benson performs her official duties in Lansing, MI.

7. Lansing, MI is in the Western District of Michigan. Therefore, venue is proper within the Western District of Michigan under 28 U.S.C. § 1391(b)(1).[2]

8. Events giving rise to the causes of action pled and alleged herein occurred in the Western District of Michigan.

## III. **PARTIES**

9. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

---

[2] Under 28 U.S.C. § 1391(b)(1) venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The determination of the proper venue for a civil action in federal court is "generally governed by 28 U.S.C. 1391." *Atlantic Marine Const. Co. v U.S. District. Court for W.Dist. of Texas*, 571 U.S. 49, 55 (2013). "[T]he court must determine whether the case falls within one of the three categories set out in 1391(b). If it does, venue is proper[.]" *Id*. at 55.

10.     Plaintiff, Robert Davis ("**Plaintiff Davis**" or "**Plaintiff**"), is a resident and registered voter of the City of Highland Park, County of Wayne, State of Michigan.  On October 5, 2020, Plaintiff Davis voted by absentee ballot for the upcoming November 3, 2020 presidential general election.

11.     Defendant, Jocelyn Benson ("**Defendant Secretary of State**"), is the duly elected Secretary of State for the State of Michigan.  Defendant Secretary of State "the chief election officer of the state" with "supervisory control over local election officials in the performance of their duties under the provisions of" the Michigan Election Law, MCL 168.1 *et seq*. Mich. Comp. Laws §168.21.

12.     Defendant, Janice Winfrey ("**Defendant Detroit City Clerk**" or "**Defendant Janice Winfrey**"), is the duly elected City Clerk for the City of Detroit. Defendant Detroit City Clerk has served continuously as the elected City Clerk for the City of Detroit since January 1, 2006.

13.     Defendant, Detroit Department of Elections ("**Defendant Department of Elections**") is a department created by §3-101 of

the 2012 Detroit City Charter that is charged with the responsibility to plan, monitor, and administer all elections in the City of Detroit. The Defendant Department of Elections is ran and headed by the Defendant Detroit City Clerk.

14.     Defendant, Brenda Green ("**Defendant Highland Park City Clerk" or "Defendant Green**"), is the duly elected City Clerk for the City of Highland Park.

15.     An actual controversy exists between the Plaintiff and the named Defendants.

## IV.   CAUSES OF ACTION

### COUNT I
**Defendant Secretary of State's Failure To Provide Funds To All Local Clerks To Pay For Costs Associated With Mass Mailing Unsolicited Absentee Voter Applications and Defendant Green's Failure To Adhere To The Defendant Secretary of State's Directives and Instructions Authorizing Local Clerks To Mass Mail Unsolicited Absentee Ballot Applications To Registered Voters, Violated Plaintiff Davis' Right To Equal Protection Under The Law To Participate In An Election On Equal Basis As Other Registered Voters.**

16.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

17.     Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.,* this claim is being brought by

Plaintiff Davis against Defendant Secretary of State, in both her individual and official capacities as the duly elected Secretary of State for the State of Michigan.

18. Plaintiff seeks an award of damages for this claim/count against the Defendant Secretary of State in her individual capacity.

19. For this count, Plaintiff also seeks prospective declaratory and injunctive relief against Defendant Secretary of State in her official capacity.

20. For this count, Plaintiff properly alleges that the Defendant Secretary of State's directive to local clerks authorizing them to unlawfully mass mail unsolicited absentee voter applications to registered voters in the City of Detroit for the November 3, 2020 presidential primary election violated Plaintiff Davis' right under the equal protection clause of the Fourteenth Amendment to participate in an election on equal terms as other registered voters.

21. For this count, Plaintiff also properly alleges that the Defendant Brenda Green's failure to adhere to and follow the Defendant Secretary of State's directives and instructions to local clerks authorizing them to mass mail unsolicited absentee voter

applications to registered voters for the November 3, 2020 presidential primary election violated Plaintiff Davis' right under the equal protection clause of the Fourteenth Amendment to participate in an election on equal terms as other registered voters.

22.     Under the Michigan Election Law, Mich. Comp. Laws §168.1 *et seq.*, and specifically Mich. Comp. Laws §168.21, the Defendant Secretary of State is the chief elections officer of the state and has supervisory authority over local election officials, including the Defendants Detroit City Clerk, Detroit Department of Elections and Brenda Green, performing their duties.

23.     Under Mich. Comp. Laws §168.31, local election officials, including Defendants Detroit City Clerk, Department of Elections, and Brenda Green must follow the Defendant Secretary of State's instructions and/or directives regarding the conduct of elections.

24.     Sometime in April/May 2020, the Defendant Secretary of State advised, from her office in Lansing, MI, the Defendants Detroit City Clerk and Department of Elections that it was lawful for the Defendants Detroit City Clerk and Department of Elections to unlawfully mass mail unsolicited absentee voter

applications to registered voters in the City of Detroit for the

August 4, 2020 primary election.

25.     Sometime in April/May 2020, the Defendants Secretary of

State and Detroit City Clerk met privately and secretly in Lansing

and conspired to develop a plan for the Defendants Detroit City

Clerk and Department of Elections to unlawfully mass mail

unsolicited absentee voter applications to the registered voters in

the City of Detroit for the August 4, 2020 primary election.

26.     Plaintiff has personal and first-hand knowledge of the

private meetings held by and between the Defendants Secretary of

State and Janice Winfrey because Plaintiff, as an employee of the

State of Michigan that serves as a policy advisor to a senior

democratic state representative, was told personally and

confidentially by individuals and/or political insiders who had

first-hand knowledge of the discussions and private meetings

being held privately by and between the Defendants Secretary of

State and Janice Winfrey.

27.     Additionally, Plaintiff has personal and first-hand

knowledge of the private meetings held by and between

Defendants Secretary of State and Janice from the documents

Plaintiff obtained and reviewed under Michigan's Open Meetings

Act (OMA) and Freedom of Information Act (FOIA) and from the

information provided via email by Assistant Attorney General

Heather Meingast.

28.     Defendants Secretary of State and Detroit City Clerk

secretly conspired and developed a plan in Lansing to allow the

Defendants Detroit City Clerk and Department of Elections to

unlawfully mass mail unsolicited absentee voter applications to all

of the registered voters in the City of Detroit in an effort to boost

voter turnout amongst the heavily democratic area for both the

August 4, 2020 primary and November 3, 2020 presidential

general election.

29.     Defendant Detroit City Clerk stated publicly at the May 14,

2020 meeting of the Detroit Election Commission that the

Defendant Detroit City Clerk had "talked with the Secretary of

State and she is in support of a predominantly mail-in election.

She suggests every clerk speak with their legal team before doing

such, but she definitely supports it." (**See Approved Minutes**

**from Detroit Election Commission's May 14, 2020 meeting attached as Exhibit A**).

30.     Complying with the directive and advice given by the Defendant Secretary of State, in May/June 2020, the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailed unsolicited absentee ballot applications to all of the registered voters in the City of Detroit in violation of Mich. Comp. Laws §168.759 and the Michigan Court of Appeals' holding in *Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv denied*, 483 Mich. 907; 762 NW 2d 169 (2009).

31.     Plaintiff Davis publicly objected to the Defendants Detroit City Clerk and Department of Elections unlawfully mass mailing unsolicited absentee voter applications to all of the registered voters in the City of Detroit.

32.     In late May or early June 2020, Brenda Hill, as a registered voter in the City of Detroit, received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the August 4, 2020 primary election.

33.     In late May or early June 2020, nonparty Leigh Reed-Pratt,

as a registered voter in the City of Detroit, also received an

unsolicited absentee voter application from the Defendants

Detroit City Clerk and Department of Elections for the August 4,

2020 primary election. (**See The Unsolicited Absentee Voter**

**Application Leigh Reed-Pratt Received from the**

**Defendants Detroit City Clerk and Department of**

**Elections for the August 4, 2020 primary election attached**

**as Exhibit B**).

34.     As a result of the Defendants Detroit City Clerk's and

Department of Elections' unlawful actions of mailing unsolicited

absentee voter applications to all of the registered voters in the

City of Detroit, there was a HUGE increase in voter turnout in the

Democratic stronghold in the City of Detroit for the August 4,

2020 primary election.

35.     In an effort to increase the voter turnout in the Democratic

stronghold for the upcoming November 3, 2020 presidential

general election, sometime in August 2020 after the August 4,

2020 primary election, the Defendant Secretary of State again met

privately in Lansing with Defendant Detroit City Clerk  and

directed and advised the Defendant Detroit City Clerk that the

Defendant Detroit City Clerk had the legal authority to mass mail

unsolicited absentee voter applications to registered voters in the

City of Detroit who did not return an absentee voter application in

the August 4, 2020 primary election.

36.     Again, Plaintiff has personal and first-hand knowledge of the

private meetings held by and between the Defendants Secretary of

State and Janice Winfrey because Plaintiff, as an employee of the

State of Michigan that serves as a policy advisor to a senior

democratic state representative, was told personally and

confidentially by individuals and/or political insiders who had

first-hand knowledge of the discussions and private meetings

being held privately by and between the Defendants Secretary of

State and Janice Winfrey.

37.     In early September 2020, complying with the directive and

advice given by the Defendant Secretary of State, the Defendants

Detroit City Clerk and Department of Elections unlawfully mass

mailed absentee voter applications to all registered voters in the

City of Detroit for the impending November 3, 2020 presidential general election.

38.     On or about Tuesday, September 15, 2020, Brenda Hill received, via U.S. Mail, at her home residence an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election. (**See Unsolicited Absentee Voter Application Brenda Hill received from Defendants Detroit City Clerk and Department of Elections for the November 3, 2020 general election attached as Exhibit C**).

39.     On or about September 14, 2020, Leigh Reed-Pratt, a registered voter in the City of Detroit, also received an unsolicited absentee voter application from the Defendants Detroit City Clerk and Department of Elections for the impending November 3, 2020 presidential general election.

40.     However, prior to the Defendants' unlawful actions of mass mailing unsolicited absentee voter applications to the registered voters in the City of Detroit, Plaintiff Davis publicly objected to

the Defendants Detroit City Clerk and Department of Elections engaging in such unlawful conduct.

41.     On August 26, 2020, Plaintiff Davis spoke at length with Alecia Brown, Interim Deputy Director of Elections for the City of Detroit, about a number of election-related matters including the Defendant Detroit City Clerk's intentions to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020 presidential general election.

42.     On August 26, 2020, Plaintiff Davis also spoke with Akilah Williams, an elections clerk in the Detroit City Clerk's office, regarding the Detroit City Clerk's internal operations for handling absentee ballot requests.

43.     On August 26, 2020, both Alecia Brown and Akilah Williams advised Plaintiff Davis that it was their understanding that the Defendant Detroit City Clerk Janice Winfrey was preparing to mass mail **unsolicited** absentee voter **applications** to registered voters in the City of Detroit for the upcoming November 3, 2020

general election, just as she had done for the August 4, 2020

primary election.

44.     That same day, Brenda Hill was also advised by a local

election official purportedly affiliated with the Defendant Detroit

City Clerk's office that the Defendant Detroit City Clerk was

preparing to mass mail **unsolicited** absentee voter **applications**

to registered voters in the City of Detroit for the upcoming

November 3, 2020 presidential general election.

45.     Upon learning of this disturbing information, Plaintiff Davis

and Brenda Hill requested attorney Paterson to send a written

request to Defendant Secretary of State and the State Director of

Elections requesting the Defendant Secretary of State to properly

advise the Defendant Detroit City Clerk as to the proper methods

of conducting the November 3, 2020 presidential general election

with respect to mailing of absentee voter applications to registered

voters in the City of Detroit.

46.     On August 27, 2020, on behalf of Plaintiff Davis and Brenda

Hill, attorney Paterson emailed Defendant Secretary of State and

the State Director of Elections a written request respectfully

requesting for the Defendant Secretary of State to advise the Detroit City Clerk and her staff on the proper methods of conducting the November 3, 2020 presidential general election. **(See Attorney Paterson's August 27, 2020 Email to Defendants attached as Exhibit D)**.

47.    Because of the urgency of the matter and the exigencies of the impending November 3, 2020 general election, Attorney Paterson's August 27, 2020 written request requested a response from the Defendants by 3 p.m. on August 27, 2020. **(See Attorney Paterson's August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit D)**.

48.    As expected, attorney Paterson did not receive a response to Plaintiff Davis' and Brenda Hill's request by 3 p.m. on August 27, 2020.  Consequently, later that same day at approx. 4:27 p.m., attorney Paterson sent the Defendant Secretary of State a follow-up email requesting a written response by 10 a.m. on August 28, 2020. **(See Attorney Paterson's August 27th and 28th, 2020 Email to Defendant Secretary of State attached as Exhibit D)**.

49.     Again, as expected, Defendant Secretary of State did **not**

provide a written response to Plaintiff Davis' and Brenda Hill's

written request.  Therefore, Defendant Secretary of State's refusal

to provide a written response by the deadline set forth in the

request constituted a denial of Plaintiff Davis and Brenda Hill's

written request. (**See Attorney Paterson's August 27th and**

**28th, 2020 Email to Defendants attached as Exhibit D**).

50.     Upon receiving confidential information from political

insiders and/or from individuals who had first-hand knowledge of

Defendants Secretary of State and Janice Winfrey's secret

meetings, Plaintiff began conducting his own investigation into

whether Defendant Secretary of State was advising local clerks to

unlawfully mass mail unsolicited absentee voter applications to

registered voters in their respective jurisdictions.

51.     In accordance with Michigan's Open Meetings Act (OMA)

and Freedom of Information Act (FOIA), Plaintiff began

requesting various public documents to ascertain whether the

Defendant Secretary of State was advising local clerks to

unlawfully mass mail unsolicited absentee voter applications to

registered voters in their respective jurisdictions for the August 4, 2020 primary and November 3, 2020 general elections.

52.     Upon reviewing various public documents obtained under the OMA and FOIA, and speaking with various local clerks and election officials, including the Defendants, Plaintiff discovered that the Defendant Secretary of State advised and directed all local clerks, including Defendants Janice Winfrey and Brenda Green, that due to the Coronavirus (COVID-19) pandemic, they had the legal authority to mass mail unsolicited absentee voter applications to all of their registered voters in their respective jurisdictions for the August 4, 2020 primary and November 3, 2020 general elections.

53.     For the August 4, 2020 primary election ONLY, the Defendant Secretary of State mass mailed absentee voter applications to registered voters in communities and locales where the local clerk did **NOT** mass mail unsolicited absentee voter applications to their respective registered voters.

54.     For the August 4, 2020 primary election, the Defendant Secretary of State did **NOT** mass mail unsolicited absentee voter

applications to the registered voters in the City of Detroit because the Defendant Janice Winfrey advised the Defendant Secretary of State that the Defendants Janice Winfrey and Detroit Department of Elections would mass mail unsolicited absentee voter applications to the registered voters in the City of Detroit themselves.

55.    According to public records and public media interviews, the Defendant Secretary of State agreed to reimburse the City of Detroit for costs associated with the mass mailing of the unsolicited absentee voter applications to all of the registered voters in the City of Detroit with federal funds the state of Michigan were to receive under the CARES Act.

56.    For the August 4, 2020 primary election ONLY, the Defendant Secretary of State mass mailed unsolicited absentee voter applications to registered voters in communities and locales where the local clerk was not mass mailing unsolicited absentee voter applications to all of the registered voters in that particular community, which included the City of Highland Park--where Plaintiff resides and is registered to vote.

57.     The Defendant Brenda Green did not mass mail unsolicited absentee voter applications to all of the registered voters in the City of Highland Park for the August 4, 2020 primary election because the City of Highland Park did not have the funds available in its budget and the Defendant Secretary of State did not commit to provide the City of Highland Park with funds to cover the costs associated with the costly mass mailing.

58.     However, due to multiple meritorious legal challenges prior to and during the August 4, 2020 primary election, the Defendant Secretary of State decided **NOT** to mail unsolicited absentee voter applications to registered voters in certain communities and locales for the November 3, 2020 presidential general election.

59.     Instead, the Defendant Secretary of State advised and directed local clerks, including Defendants Janice Winfrey and Brenda Green that due to the COVID-19 pandemic, they had the legal authority to mass mail unsolicited absentee voter applications to all of the registered voters in their respective jurisdictions to encourage voters to vote by mail.

60.     Like for the August 2020 primary, the Defendant Secretary

of State again committed and promised the Defendant Janice

Winfrey that the state would reimburse the City of Detroit for all

costs associated with the costly mass mailing of absentee voter

applications for the November 3, 2020 presidential general

election.

61.     However, the Defendant Secretary of State did not make

that same promise or commitment to the Defendant Brenda Green

for the City of Highland Park.

62.     Consequently, as a result of not receiving a commitment

from the Defendant Secretary of State to reimburse the City of

Highland Park for costs incurred, Defendant Brenda Green did

NOT mass mail unsolicited absentee voter applications to all of

the registered voters in the City of Highland Park for the

November 3, 2020 general election.

63.     Unlike for the August 4, 2020 primary election, Plaintiff

Davis did NOT receive an unsolicited absentee voter application in

the mail from the Defendant Secretary of State for the November

3, 2020 general election.

64.     As noted, due to pending litigation, the Defendant Secretary of State did **NOT** mass mail unsolicited absentee voter applications to *any* registered voter in the state of Michigan for the November 3, 2020 general election.

65.     Accordingly, Plaintiff did not receive through the mail an unsolicited absentee voter application from the Defendant Secretary of State for the November 3, 2020 general election.

66.     Despite the Defendant Secretary of State's directives and instructions, the Defendant Highland Park City Clerk Brenda Green did not mass mail unsolicited absentee voter applications to all of the registered voters in the City of Highland Park for the November 3, 2020 general election.

67.     Rather, the Defendant Highland Park City Clerk Brenda Green advised Plaintiff Davis that if he desired to vote by absentee ballot in the upcoming November 3, 2020 general election, Plaintiff Davis would have to comply with the provisions of Michigan Election Law, specifically, Mich.Comp.Laws §168.759.

68.     On October 5, 2020, in accordance with Mich.Comp.Laws §168.759(5), Plaintiff Davis personally appeared at the Defendant

Highland Park City Clerk Brenda Green's in the City of Highland and verbally requested an absentee voter application.

69.     Pursuant to Mich.Comp.Laws §168.759(6), after receiving his absentee voter application, Plaintiff Davis immediately filled out his absentee voter application and submitted to the Defendant Highland Park City Clerk Brenda Green on site.

70.     Pursuant to Mich.Comp.Laws §168.761(1), after verifying Plaintiff Davis' signature and identity, the Defendant Highland Park City Clerk Brenda Green proceeded with providing Plaintiff Davis with an absentee ballot for the November 3, 2020 general election.

71.     Plaintiff Davis immediately voted his absentee ballot at the Highland Park City Hall and pursuant to Mich.Comp.Laws §168.764a(b), Plaintiff Davis personally delivered and returned his voted absentee ballot to a staff person for the Defendant Highland Park City Clerk Brenda Green on October 5, 2020.

72.     Plaintiff Davis, who is a life-long democrat, voted for former Vice President Joe Biden and U.S. Senator Kamala Harris for President and Vice President of the United States.

73.     Plaintiff Davis, who is a life-long democrat, also voted for

Mary Kelly, who was nominated by the Michigan Republican

Party, for the Michigan Supreme Court.

74.     However, the registered voters in the City of Detroit did

NOT have to strictly comply with the provisions of

Mich.Comp.Laws §168.759 to receive an absentee voter

application.

75.     The Defendant Secretary of State's directive to the

Defendants Janice Winfrey and Department of Elections

authorizing the Defendants Janice Winfrey and Department of

Elections to mass mail unsolicited absentee voter applications to

the registered voters in the City of Detroit was contrary to

Michigan law and the Michigan Court of Appeals' holding in

*Taylor v Currie*, 277 Mich. App. 85; 743 NW2d 571 (2007), *lv*

*denied,* 483 Mich. 907; 762 NW 2d 169 (2009).

76.     Any directives and/or instructions the Defendant Secretary

of State issues to local clerks in accordance with Mich.Comp.Laws

§168.31 cannot conflict with state law or binding precedent.

77.     The Defendant Secretary of State's directive to the

Defendants Janice Winfrey and Department of Elections

authorizing the Defendants Janice Winfrey and Department of

Elections to mass mail unsolicited absentee voter applications to

all of the registered voters in the City of Detroit was intended to

increase voter turnout in the predominantly democratic city.

78.     However, like the Defendant Janice Winfrey, upon

information and belief, the Defendant Secretary of State also

directed and advised the Defendant City of Highland Park Brenda

Green that due to the COVID-19 pandemic, Defendant City of

Highland Park City Clerk Brenda Green also had the legal

authority to mass mail unsolicited absentee voter applications to

all of the registered voters in the City of Highland Park for the

November 3, 2020 general election.

79.     The Defendant Highland Park City Clerk Brenda Green

apparently ignored the Defendant Secretary of State's directive

and instructions and did not mass mail unsolicited absentee voter

applications to Plaintiff and other registered voters in the City of

Highland Park for the November 3, 2020 general election.

80.     Consequently, unlike the registered voters in the City of
Detroit, Plaintiff did not receive through the mail an unsolicited
absentee voter application from the Defendant Highland Parkthe
Defendant and Plaintiff was required to strictly comply with the
requirements of Mich.Comp.Laws §168.759 to receive an absentee
ballot application for the November 3, 2020 general election.

81.     Defendant Secretary of State's directives and instructions to
Defendants Janice Winfrey, Department of Elections, and Brenda
Green were arbitrary and caused Plaintiff to be treated differently
from the registered voters in the City of Detroit.

82.     Defendants Janice Winfrey and Department of Elections'
actions of unlawfully mailing unsolicited absentee voter
applications to all of the registered voters in the City of Detroit for
the upcoming November 3, 2020 general election was arbitrary.

83.     As evidence that the Defendants Janice Winfrey and
Department of Elections' actions were arbitrary, the Defendants
Janice Winfrey and Department of Elections have never mailed
unsolicited absentee voter applications to all of the registered

voters in the City of Detroit after the Court of Appeals ruling in *Taylor v Currie, supra.*

84.     As a result of the Defendant Highland Park City Clerk Brenda Green failing to follow the directives and instructions of the Defendant Secretary of State, which she was required and mandated to follow under Michigan Election Law, Plaintiff was treated differently than the registered voters in the City of Detroit, whose clerk unlawfully mailed to them unsolicited absentee voter applications with postage prepaid return envelopes to return their completed and signed absentee voter applications.

85.     The Defendant Secretary of State provided Defendants Janice Winfrey and Detroit Department of Elections with federal funds the state received to pay for the cost associated with the mass mailing of the unsolicited absentee ballot applications to all of the registered voters in the City of Detroit for the August 4, 2020 primary and November 3, 2020 general elections as well as paying for the postage prepaid return envelopes.

86.     The Defendant Secretary of State did not provide Defendant Brenda Green with federal funds the state received to pay for the

costs associated with a mass mailing of unsolicited absentee ballot

applications to the registered voters in the City of Highland Park

**WHEREFORE**, Plaintiff Davis requests this Court enters

judgment against Defendants Secretary of State and Brenda Green as

follows:

    a. compensatory damages in whatever amount above $75,000.00 Plaintiff is found to be entitled;

    b. an award of exemplary and punitive damages;

    c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

    d. a declaration that the Defendant Secretary of State's refusal to provide all local clerks, including Defendant Brenda Green, with funds to reimburse local municipalities for costs incurred for mass mailing unsolicited absentee ballot applications for the November 3, 2020 general election, resulted in a violation of Plaintiff Davis' right to equal protection under the law under the Fourteenth Amendment;

    e. a declaration that the Defendant Brenda Green's failure to comply with the Defendant Secretary of State's directives and instructions to local clerks authorizing them to mass mail unsolicited absentee voter applications for the November 3, 2020 general election caused Plaintiff to be treated differently from registered voters in the City of Detroit and thus violated Plaintiff's right to equal protection under the law under the Fourteenth Amendment;

    f. a declaration that the Defendant Brenda Green must follow the directives and instructions issued by the Defendant Secretary of State until such time as a court of competent jurisdiction determines that said instruction or directive is contrary to state or federal law;

g. enjoin the Defendant Secretary of State issuing instructions or directives to local clerks and election officials advising them that they have the legal authority to mass mail unsolicited absentee voter applications to registered voters in their respective jurisdictions for any election; and

h. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT II
**Due Process Claim- Defendant Secretary of State Violated Plaintiff's Procedural Due Process Rights By Denying Plaintiff's Request for Post-Election Audits With Respect to The Unsolicited Absentee Voter Applications That Were Unlawfully Mass Mailed By The Defendants Detroit City Clerk and Detroit Department of Elections For The August 4, 2020 Primary and November 3, 2020.**

87. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

88. Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.,* this claim is being brought by Plaintiff Davis against Defendant Secretary of State, in her official and individual capacity, as the duly elected Secretary of State for the State of Michigan.

89. However, Plaintiff seeks an award of damages for this claim/count against the Defendant Secretary of State in her individual capacity.

90.     For this count, Plaintiff also seeks prospective declaratory and injunctive relief against Defendant Secretary of State in her official capacity.

91.     On November 24, 2020, Plaintiff sent a written request to the Defendant Secretary of State respectfully requesting the Defendant Secretary of State to conduct a post-election audit of the August 4, 2020 primary and November 3, 2020 general elections pursuant to Mich.Const.1963, art. 2, §4(1)(h) "to ascertain which local clerks unlawfully mass mailed unsolicited absentee voter applications to registered voters in their respective jurisdictions for the August 4, 2020 primary and November 3, 2020 general elections and whether the local clerks were advised it was lawful to do so by the Secretary of State."

92.     Plaintiff requested that the Defendant Secretary of State provide a formal written response to his request by the close of business on November 30, 2020.

93.     As of the date of the filing of this amended complaint, Plaintiff has not received a formal written response to Plaintiff's November 24, 2020 written request.

94.     However, on December 9, 2020, it was reported in both the Detroit Free Press and Detroit News that the Defendant Secretary of State issued a statement announcing that the Defendant Secretary of State would be conducting audits that include a statewide risk-limiting audit, a zero-margin risk-limiting audit in Antrim County, and procedural audits in 200 other jurisdictions, including Detroit, Livonia and other Wayne County municipalities.[3]

95.     Notably, however, the audits that the Defendant Secretary of State has announced her office will be conducting does NOT include an audit "to ascertain which local clerks unlawfully mass mailed unsolicited absentee voter applications to registered voters in their respective jurisdictions for the August 4, 2020 primary and November 3, 2020 general elections and whether the local clerks were advised it was lawful to do so by the Secretary of State" as Plaintiff has requested.

---

[3]     https://www.detroitnews.com/story/news/politics/2020/12/09/benson-conduct-statewide-audits-plus-ones-wayne-antrim-counties/3863350001/

96.     Additionally, the audits that the Defendant Secretary of State has announced do NOT include the August 4, 2020 primary election.

97.     In accordance with Federal Law, because both the August 4, 2020 primary and November 3, 2020 general elections involved federal offices, the Defendant Secretary of State and all county, city, township and village clerks must maintain and retain all records pertaining to said elections, including all ballots cast and absentee voter applications, for 22 months.

98.     By not responding and/or honoring Plaintiff's request, Defendant Secretary of State has denied Plaintiff his right to have a post-election audit as guaranteed under the Mich.Const.1963, art, 2, §4(1)(h).

99.     It is well-settled in Michigan jurisprudence that Plaintiff, as a qualified elector of the state of Michigan, has a state constitutional "[t]he right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections[.]" See Mich.Const.1963, art. 2, §4(1)(h).

100.     Thus, Plaintiff has a protected property and state-created liberty interest in having the Defendant Secretary of State conducting a post-election audit upon request.

101.     By denying Plaintiff's request for a post-election audit of the August 4, 2020 primary and November 3, 2020 general elections "to ascertain which local clerks unlawfully mass mailed unsolicited absentee voter applications to registered voters in their respective jurisdictions for the August 4, 2020 primary and November 3, 2020 general elections and whether the local clerks were advised it was lawful to do so by the Secretary of State," the Defendant Secretary of State has violated Plaintiff's procedural due process rights under the Fourteenth Amendment.

**WHEREFORE**, Plaintiff Davis requests this Court enters judgment against Defendant Secretary of State as follows:

    a. compensatory damages in whatever amount above $75,000.00 Plaintiff is found to be entitled;

    b. an award of exemplary and punitive damages;

    c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

    d. a declaration that the Defendant Secretary of State's actions of denying and/or ignoring Plaintiff's November 24, 2020 request for post-election audits of the state-wide election results from the August 3, 2020 primary and November 4, 2020 general elections violated Plaintiff

Davis' procedural due process rights under the Fourteenth Amendment;

e. a declaration that Plaintiff Davis has a protected property interest to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections upon request pursuant to Mich.Const.1963, art. 2, §4(1)(h);

f. a declaration that Plaintiff Davis has a state-created liberty interest to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections upon request pursuant to Mich.Const.1962, art. 2, §4(1)(h); and

g. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT III
**Class-of-One Equal Protection Claim-Defendant Secretary Of State Denied Plaintiff Davis Equal Protection Under The Law By Treating Plaintiff Davis' Request For Post-Election Audits Differently Than Other Similar Requests That Have Been Submitted To Defendant Secretary of State.**

102.    Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

103.    This claim is brought by Plaintiff Davis against Defendant Secretary of State, in her official and individual capacities pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

104.    For this claim, Plaintiff seeks damages against Defendant Secretary of State in her individual capacity.

105.     This claim, which is brought by Plaintiff Davis against the Defendant Secretary of State, in her official capacity, seeks prospective declaratory and injunctive relief.

106.     Defendant Secretary of State has treated Plaintiff Davis' November 24, 2020 request for the Defendant Secretary of State to conduct post-election audits with respect to the August 3, 2020 primary and November 4, 2020 general elections with respect to the unsolicited absentee voter applications that were mailed out to registered voters by certain local city clerks differently from similar requests the Defendant Secretary of State has received from individuals requesting the Defendant Secretary of State to conduct an audit of the votes cast and certain election irregularities that purportedly occurred in the November 3, 2020 general election.

107.     This is clearly evident by the fact that the Defendant Secretary of State on December 9, 2020 announced that the Defendant Secretary of State's office would be conducting multiple audits in response to request from supporters of President Donald J. Trump and the Republican Party.

108.    However, as noted, the audits the Defendant Secretary of State announced would be conducted do not include any of the information Plaintiff requested to be audited with respect to the unsolicited absentee voter applications that were purportedly unlawfully mailed by certain local city clerks, including the Defendant Janice Winfrey.

109.    Defendant Secretary of State has directed her staff and attorneys to ignore and not to respond and/or address any requests submitted by Plaintiff Davis.

110.    Defendant Secretary of State has a personal animus and has publicly expressed ill will towards Plaintiff Davis because Plaintiff Davis has exposed possible criminal wrongdoing committed by the Defendant Secretary of State's husband, who is a former high-level appointee of Detroit Mayor Mike Duggan.

111.    Defendant Secretary of State has expressed animus and ill will towards Plaintiff Davis by stating publicly that she dislikes, hates, and/or despise Plaintiff Davis.

112.    Defendant Secretary of State's deputy, Heaster Wheeler, has stated publicly that the Defendant Secretary of State hates and

dislikes Plaintiff Davis and that the Defendant Secretary of State
was going to do whatever it took to "shut down" Plaintiff Davis.

113.     Defendant Secretary of State also has animus towards
Plaintiff Davis because Plaintiff Davis has stated publicly in the
media that the Defendant Secretary of State is inept and corrupt.

114.     Defendant Secretary of State also has animus towards
Plaintiff Davis because Plaintiff Davis has successfully sued
Defendant Secretary of State and has exposed possible unlawful
conduct committed by the Defendant Secretary of State.

115.     Plaintiff Davis' request for post-election audits was treated
differently because of the foregoing animus and ill will the
Defendant Secretary of State has expressed towards Plaintiff
Davis.

116.     The Defendant Secretary of State's unconstitutional and
unlawful actions of treating Plaintiff Davis' request differently
than other similarly submitted requests by other individuals
violated Plaintiff Davis' constitutional right to equal protection
under the law under the class-of-one theory.

**WHEREFORE**, Plaintiff Davis requests this Honorable Court to enter judgment against Defendant Secretary of State as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled;
b. an award of exemplary and punitive damages;
c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
d. a declaration that Plaintiff Davis was denied equal protection under the law by the Defendant Secretary of State under the "class of one" theory as a result of the Defendant Secretary of State treating Plaintiff Davis' request for post-election audits differently than other similar requests submitted by other individuals; and
e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT IV
**Class-of-One Equal Protection Claim-Defendant Secretary Of State Denied Plaintiff Davis Equal Protection Under The Law By Treating Plaintiff Davis' Request For The Defendant Secretary of State To Refer Prosecutor Kym Worthy To The Attorney General For Prosecution Differently Than Other Similar Requests That Have Been Submitted To Defendant Secretary of State.**

117.    Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

118.    This claim is brought by Plaintiff Davis against Defendant Secretary of State, in her official and individual capacities pursuant

to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

119.  For this claim, Plaintiff seeks damages against Defendant Secretary of State in her individual capacity.

120.  This claim, which is brought by Plaintiff Davis against the Defendant Secretary of State, in her official capacity, seeks prospective declaratory and injunctive relief.

121.  On August 10, 2020, Plaintiff Davis, through legal counsel, submitted a petition/request to the Defendant Secretary of State requesting the Defendant Secretary of State to report Wayne County Prosecutor Kym Worthy's apparent violation of Mich.Comp.Laws §168.848 to the Michigan Attorney General for prosecution pursuant to MCL §168.31(1)(h).

122.  Plaintiff Davis, through counsel, respectfully requested that action needed to be taken by the Defendant Secretary of State on or before August 17, 2020.

123.  Plaintiff Davis' petition/request thoroughly set forth the legal basis for which Defendant Secretary of State had a legal obligation to report Wayne County Prosecutor Kym Worthy's apparent

violation of Mich.Comp.Laws §168.848 to the Michigan Attorney General for prosecution pursuant to MCL §168.31(1)(h).

124.     After not receiving a written response from the Defendant Secretary of State, on August 23, 2020, counsel for Plaintiff Davis sent an email to the Defendant Secretary of State requesting a written response to Plaintiff Davis' petition/request by the close of business on August 24, 2020.

125.     As expected, the Defendant Secretary of State did not provide a written response to Plaintiff Davis' legal counsel's August 23, 2020 written request.

126.     Defendant Secretary of State is a staunch supporter of Wayne County Prosecutor Kym Worthy and vice versa.

127.     Defendant Secretary of State does not would to comply with Mich.Comp.Laws §168.31(1)(h) because it would require Defendant Secretary of State to report her very close friend and political supporter, Kym Worthy, to the Michigan Attorney General to be prosecuted for her apparent violation of Mich.Comp.Laws §168.848 of Michigan Election Law.

128.    As set forth in Plaintiff Davis' petition/request, it is undisputed that Wayne County Prosecutor Kym Worthy, to date, has failed to timely file her postelection statement/affidavit required under Mich.Comp.Laws §168.848 from when she was elected in the November 2016 general election.

129.    On June 3, 2020, Gil Flowers, the Campaign Finance Manager for the Defendant Wayne County Clerk's office, confirmed that as of June 3, 2020, Prosecutor Worthy had **not** filed with the Defendant Wayne County Clerk's office the postelection statement required under Mich.Comp.Laws §168.848 of Michigan Election Law.

130.    In fact, as of the date of this filing, upon information and belief, Prosecutor Worthy still has **not** filed the postelection statement with the Defendant Wayne County Clerk as required under Mich.Comp.Laws §168.848.

131.    Mich.Comp.Laws §168.848(1)(b) requires an elected candidate subject to the Campaign Finance Act, whose candidate committee received or expended more than $1,000 during the election cycle, to file a postelection statement ***before*** taking office.

132.    Mich.Comp.Laws §168.848(1)(b) provides:

(1) **Each elected candidate subject to the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, and whose candidate committee received or expended *more than $1,000 during the election cycle shall file a postelection statement with the filing official designated to receive the elected candidate's candidate committee campaign statements*** under section 36 of the Michigan campaign finance act, 1976 PA 388, MCL 169.236.  All of the following apply to a postelection statement required by this section:

>    (b) The elected candidate ***shall* file the postelection statement *before* the elected candidate assumes office.** (emphasis supplied).

133.    It is **undisputed** that in 2016, Prosecutor Worthy's name appeared on the August 2016 primary and November 2016 general elections ballots as a candidate for the office of Wayne County Prosecutor for the Democratic Party.

134.    In the November 2016 general election, Prosecutor Worthy was elected as the Wayne County Prosecutor to a four-year term **commencing January 1, 2017** and ending on December 31, 2020.

135.    Campaign finance records obtained from the Wayne County Clerk's office indicate that during the 2016 "election cycle",

Prosecutor Worthy's candidate committee **"*received or expended*"** more than $1,000.

136.   It is also **undisputed** that according to Prosecutor Worthy's candidate committee's 2016 Pre-General Election Campaign Statement filed with the Defendant Wayne County Clerk's office, Prosecutor Worthy's candidate committee **received $22,275 in contributions and reported expending $6,330.45 during the 2016 election cycle[4]**.

137.   Prosecutor Worthy's candidate committee's 2016 Pre-General Election Campaign Statement covered the period from August 23, 2016 to October 23, 2016.

138.   Thus, because Prosecutor Worthy's candidate committee received or expended more than a $1,000 during the 2016 election cycle, pursuant to MCL §168.848(1)(b), Prosecutor Worthy was mandated and required to "file a postelection statement with the

---

[4] MCL §169.205(3)(a) of the Michigan Campaign Finance Act defines "election cycle" to mean: "For a general election, the period beginning the day following the last general election in which the office appeared on the ballot and ending on the day of the general election  in which the office next appears on the ballot."  Thus, the "election cycle" for the November 2016 general election commenced on the day following the 2012 November general election and ended on the day of the November 2016 general election, which is the election in which Prosecutor Worthy was last elected to the position of Wayne County Prosecutor.

filing official designated to receive the elected candidate's

candidate committee campaign statements under section 36 of the

Michigan campaign finance act, 1976 PA 388, MCL 169.236."

Mich.Comp.Laws §168.848(1)(b).

139.    As a consequence for an elected candidate failing to timely

file the postelection statement ***prior*** to assuming office, MCL

§168.848(2) provides a criminal penalty. *See In re Taylor*,

unpublished per curiam opinion of the Court of Appeals, issued

October 27, 2015 (Docket No. 327893), slip op at p 3.

140.    MCL §168.848(2) states:

> (2) **Failure to file a postelection statement as required
> by subsection (1)** *is a misdemeanor* punishable by a
> fine of not more than $500.00 or imprisonment for not
> more than 93 days, or both. (emphasis supplied).

141.    Thus, because Prosecutor Worthy failed to timely file the

postelection statement ***prior*** to assuming the office of Wayne

County Prosecutor **on January 1, 2017**, Prosecutor Worthy is

**<u>guilty of a misdemeanor</u>** pursuant to Mich.Comp.Laws

§168.848(2). *See In re Taylor*, unpublished per curiam opinion of

the Court of Appeals, issued October 27, 2015 (Docket No. 327893), slip op at p 3.

142.   The postelection statement form clearly warns that "an elected candidate...**who fails to submit this form *prior* to assuming office is guilty of a misdemeanor**."

143.   Mich.Comp.Laws §168.31(1)(h) provides:

> (1) ***The secretary of state shall do*** all of the following:
>
> (h) Investigate, or cause to be investigated by local authorities, the administration of election laws, ***and report violations of the election laws and regulations to the attorney general or prosecuting attorney, or both, for prosecution***. (emphasis supplied).

144.   The language of Mich.Comp.Laws §168.31(1)(h) is clear and unambiguous.  It is the duty of the Secretary of State to "report violations of the election laws and regulations to the attorney general...for prosecution."   *See In re Taylor*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2015 (Docket No. 327893), slip op p 5.

145.   Defendant Secretary of State has treated Plaintiff Davis' request for the Defendant Secretary of State to report Prosecutor Worthy to the Attorney General for prosecution differently from

similar requests she has received from individuals requesting the Defendant Secretary of State to report an individual for prosecution for violating the Michigan Election Law.

146.    For example, just recently, on November 13, 2020, The Detroit News reported that the Michigan Attorney General announced that she was prosecuting a father who had violated Michigan Election Law by voting his daughter's absentee ballot, but the prosecution occurred only after the case was referred to the Michigan Attorney General for prosecution by the Defendant Secretary of State as Michigan Election Law requires. *See* https://www.detroitnews.com/story/news/politics/2020/11/13/nessel -charges-man-who-filled-out-daughters-ballot-election- crackdown/6278619002/.

147.    The prosecution of the father being prosecuted for violating Michigan Election Law for voting his daughter's absentee ballot is proof that the Defendant Secretary of State has honored similar requests submitted to her office requesting the Defendant Secretary of State to report individuals to the Attorney General for

prosecution for violating certain provisions of Michigan Election Law.

148.    Upon written request from individuals that contained documentary evidence, the Defendant Secretary of State has reported individuals to the Attorney General for prosecution for violating certain provisions of Michigan Election Law.

149.    However, despite Plaintiff's request having the documentary and irrefutable evidence, the Defendant Secretary of State treated Plaintiff Davis' request differently from other similar requests because of the animus and ill will Defendant Secretary of State has towards Plaintiff Davis.

150.    Defendant Secretary of State has directed her staff and attorneys to ignore and not to respond and/or address any requests submitted by Plaintiff Davis.

151.    Defendant Secretary of State has a personal animus and has publicly expressed ill will towards Plaintiff Davis because Plaintiff Davis has exposed possible criminal wrongdoing committed by the Defendant Secretary of State's husband, who is a former high-level appointee of Detroit Mayor Mike Duggan.

152.     Defendant Secretary of State has expressed animus and ill will towards Plaintiff Davis by stating publicly that she dislikes, hates, and/or despise Plaintiff Davis.

153.     Defendant Secretary of State's deputy, Heaster Wheeler, has stated publicly that the Defendant Secretary of State hates and dislikes Plaintiff Davis and that the Defendant Secretary of State was going to do whatever it took to "shut down" Plaintiff Davis.

154.     Defendant Secretary of State also has animus towards Plaintiff Davis because Plaintiff Davis has stated publicly in the media that the Defendant Secretary of State is inept and corrupt.

155.     Defendant Secretary of State also has animus towards Plaintiff Davis because Plaintiff Davis has successfully sued Defendant Secretary of State and has exposed possible unlawful conduct committed by the Defendant Secretary of State.

156.     The Defendant Secretary of State treated Plaintiff Davis' request for the Defendant Secretary of State to report Prosecutor Kym Worthy to the Attorney General for prosecution differently than other similar requests the Defendant Secretary of State has received.

157.    Plaintiff Davis' request was treated differently because of

the foregoing animus and ill will the Defendant Secretary of State

has towards Plaintiff Davis.

158.    The Defendant Secretary of State's unconstitutional and

unlawful actions of treating Plaintiff Davis' request differently

than other similarly submitted requests by other individuals

violated Plaintiff Davis' constitutional right to equal protection

under the law under the class-of-one theory.

**WHEREFORE**, Plaintiff Davis requests this Honorable Court to

enter judgment against Defendant Secretary of State as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled;
b. an award of exemplary and punitive damages;
c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
d. a declaration that Plaintiff Davis was denied equal protection under the law by the Defendant Secretary of State under the "class of one" theory as a result of the Defendant Secretary of State treating Plaintiff Davis' request differently than other similar requests submitted by other individuals; and
e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT V

## Plaintiff Davis' Procedural Due Process Rights Were Violated By Defendant Winfrey When Plaintiff Davis Was Denied Right To Witness and Observe Tallying Of Votes In Voting Precincts After Polls Closed.

159.    Plaintiff repeats, realleges and incorporates, the foregoing

allegations, as though fully set forth and stated herein.

160.    This claim is brought by Plaintiff Davis against Defendant

Janice Winfrey, in her official and individual capacities, pursuant

to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §

2201, *et. seq.*

161.    During the November 3, 2020 general election, Plaintiff Davis

assisted candidates whose names appeared on the ballot for

partisan and nonpartisan races.

162.    On November 3, 2020, Plaintiff Davis visited various in-

person polling precincts in the City of Detroit.

163.    After the polls closed at 8 p.m., Plaintiff Davis attempted to

witness the board of election inspectors at two (2) separate in-

person polling precincts count and tally the votes cast.

164.    However, after the polls closed on November 3, 2020,

Plaintiff Davis was not allowed entry into the buildings where the

votes were being tallied and counted by the board of election
inspectors for two (2) in-person polling precincts.

165.     Specifically, Plaintiff Davis attempted to witness and
observe the counting and tallying of the votes at the in-person
voting precinct at Noble Elementary School, but after the polls
closed at 8 p.m., the board of election inspectors at Noble
Elementary School closed and locked the doors to the location
where the votes were to be counted and tallied.

166.     Similarly, after Plaintiff Davis was denied the opportunity to
witness and observe the counting and tallying of the votes at
Noble Elementary School, Plaintiff Davis then drove to another
polling location located on 7 mile and Livernois.

167.     When Plaintiff Davis arrived at the polling location located
on 7 mile and Livernois, the doors were locked and Plaintiff Davis
was denied entry into the polling location to witness and observe
the counting and tallying of the votes cast at that voting precinct
after the polls closed.

168.     Plaintiff Davis was denied his statutory right under
Mich.Comp.Laws §§168.801 and 168.807 to witness the counting

and tallying of the votes by the board of election inspectors at the in-person voting precincts.

169.    Plaintiff Davis has a protected property interest under Mich.Comp.Laws §§168.801 and 168.807 to be physically present and witness the counting and tallying of votes cast by the board of election inspectors at any in-person polling precinct in the City of Detroit.

170.    Defendant Winfrey, who is responsible for administering and overseeing elections held in the City of Detroit allowed Plaintiff Davis to be denied his statutory right.

171.    One of the election workers at one of the voting precincts told Plaintiff Davis that Defendant Winfrey instructed them to lock the doors after the polls closed at 8 p.m. and that no one was to be allowed in when they were to commence counting and tallying the votes.

172.    Defendant Winfrey also denied Plaintiff this statutory right to be physically present inside an in-person voting precinct to witness the counting and tallying of votes cast after the polls close in the August 4, 2020 primary election.

**WHEREFORE**, Plaintiff Davis requests this Court enter

judgment against Defendant Winfrey as follows:

    a. compensatory damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled;

    b. an award of exemplary and punitive damages;

    c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;

    d. a declaration that Plaintiff Davis' procedural due process rights were violated and denied by Defendant Winfrey when Plaintiff Davis was denied entry in certain polling locations to witness the counting and tallying of votes cast after the polls close on the night of the November 3, 2020 presidential general election;

    e. a declaration that pursuant to Mich.Comp.Laws §§ 168.801 and 168.807, Plaintiff Davis had the right to be personally witness and observe the counting and tallying of votes cast in any voting precinct after the polls close at 8 p.m. on the night of the November 3, 2020 presidential general election;

    f. an injunction enjoining the Defendant Winfrey from preventing Plaintiff Davis from witnessing the counting and tallying of votes cast at any voting precinct after the polls have closed for any election held in the City of Detroit in the future; and

    g. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT VI

## Plaintiff Davis' Procedural Due Process Rights Were Violated By Defendant Green When Plaintiff Davis Was Denied Right To Witness and Observe Tallying Of Votes In Voting Precincts After Polls Closed On Election Night November 3, 2020.

173.    Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

174.    This claim is brought by Plaintiff Davis against Defendant Brenda Green, in her official capacity, pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

175.    During the November 3, 2020 general election, Plaintiff Davis assisted candidates whose names appeared on the ballot for partisan and nonpartisan races.

176.    On November 3, 2020, Plaintiff Davis attempted to personally observe the counting of votes cast at a certain precinct and cast via absentee ballot for the City of Highland Park.

177.    After the polls closed at 8 p.m., around 9:15 pm, Plaintiff Davis attempted to witness the board of election inspectors at the in-person voting precinct located at Geneva and Hamilton in Highland Park count and tally the votes cast.

178.    However, Plaintiff Davis was not allowed entry into the

building, which is a church, located at Geneva and Hamilton

around 9:15 pm on November 3, 2020 after the polls closed.

179.    After Plaintiff Davis was denied entry, Plaintiff then

proceeded to the Highland Park City Hall to attempt to witness

the counting of absentee ballots by the absentee counting board.

180.    Similarly, Plaintiff Davis was denied the opportunity to

witness and observe the counting and tallying of the votes at by

the absentee counting board at the Highland Park City Hall.

181.    Accordingly, Plaintiff Davis was denied his statutory right

under Mich.Comp.Laws §§168.801 and 168.807 to witness the

counting and tallying of the votes by the board of election

inspectors at the in-person voting precincts.

182.    Plaintiff Davis has a protected property interest under

Mich.Comp.Laws §§168.801 and 168.807 to be physically present

and witness the counting and tallying of votes cast by the board of

election inspectors at any in-person polling precinct or absentee

counting board.

183.    Defendant Green, who is responsible for administering and

overseeing elections held in the City of Highland Park allowed

Plaintiff Davis to be denied his statutory right.

184.    One of the election workers/inspectors at the in-person

voting precinct at Geneva and Hamilton told Plaintiff Davis that

Defendant Brenda Green instructed them to lock the doors after

the polls closed at 8 p.m. and that no one was to be allowed in

when they were to commence counting and tallying the votes.

**WHEREFORE**, Plaintiff Davis requests this Court enter

judgment against Defendant Brenda Green as follows:

   a. compensatory damages in whatever amount above
      $75,000.00 Plaintiffs are found to be entitled;
   b. an award of exemplary and punitive damages;
   c. an award of interest, costs and reasonable attorney fees
      under 42 USC §1988;
   d. a declaration that Plaintiff Davis' procedural due process
      rights were violated and denied by Defendant Brenda
      Green when Plaintiff Davis was denied entry in certain
      polling locations to witness the counting and tallying of
      votes cast after the polls closed on the night of the
      November 3, 2020 presidential general election, including
      the counting of absentee ballots cast in the November 2020
      general election by the AV counting board;
   e. a declaration that pursuant to Mich.Comp.Laws §§ 168.801
      and 168.807, Plaintiff Davis had the right to be personally
      witness and observe the counting and tallying of votes cast
      in any voting precinct after the polls close at 8 p.m. on the

night of the November 3, 2020 presidential general election;

f. an injunction enjoining the Defendant Brenda Green from preventing Plaintiff Davis from witnessing the counting and tallying of votes cast at any voting precinct after the polls have closed for any election held in the City of Highland Park in the future; and

g. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: December 9, 2020                 Respectfully submitted,

                                         */s/ ANDREW A. PATERSON*
                                        ANDREW A. PATERSON (P18690)
                                        Attorney for Plaintiff
                                        2893 E. Eisenhower Pkwy
                                        Ann Arbor, MI 48108
                                        (248) 568-9712
                                        aap43@outlook.com

**VERIFIED AMENDED COMPLAINT**

I, Robert Davis, declare under the penalties of perjury that this first-amended verified complaint has been examined by me and that its contents are true and correct to the best of my knowledge, information, and belief.

/s/ ROBERT DAVIS
_____
ROBERT DAVIS
Dated: December 9, 2020

## JURY DEMAND

Plaintiff, through counsel, respectfully demands a jury trial on all

issues triable to a jury.

Dated: December 9, 2020          Respectfully submitted,
                                 */s/ ANDREW A. PATERSON*
                                 ANDREW A. PATERSON (P18690)
                                 Attorney for Plaintiff
                                 2893 E. Eisenhower Pkwy
                                 Ann Arbor, MI 48108
                                 (248) 568-9712
                                 aap43@outlook.com